UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
APR 1 6 2013
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4·13CRO143SNLJ |
| | ) | |
| v. | ) | No. |
| | ) | |
| SHAHADU SUTTON, a/k/a "Shi," "Shah," | ) | Counts 1,2,3,7,9,10,11,12,13,16,17,18,19,21, |
| "Sean," | ) | 22,23,24,25,26,27,30,31,33,34,37,40,44,45, |
| | ) | 46,49,50,51,52,53,61,63,65,67,70,72,74,76, |
| | ) | 83 |
| TIFFANY SUTTON, | ) | Counts 1,3,7,9,12,13,23,25,26,31,55 |
| MORRIS DAVIS, a/k/a "Mo," | ) | Counts1,13,17,18,21,27,28,29,30,31,32,33, |
| | ) | 34,35,36,37,38,39,40,41,42,43,44,45,50,57, |
| | ) | 70 |
| ORLANDO PRESTON, a/k/a "Black," | ) | Counts 1,48,54,55,58,84 |
| "Pookie" | ) | |
| WILLIAM SMITH, a/k/a "BJ," | ) | Counts 1,46,47,48,49,51,52,53,54,55,57,58, |
| | ) | 71,72,74,83 |
| REGINALD MCNEARY, a/k/a "Reggie," | ) | Counts1,4,8,14,15,50,51,57,60,62,64,66,67, |
| "Red", "Richard" | ) | 68,69,82 |
| ROBERT REECE, a/k/a "Orlando," "O," | ) | Counts 1,36,40,44,45,50 |
| JOHN HICKS, | ) | Counts 1,9,10,11,12,29,70 |
| REGINALD DAVIS, a/k/a "Reggie," | ) | Counts 1,18,47,71 |
| RANDY TERRELL, a/k/a "Red," | ) | Counts 1,56,73,75,76,81 |
| LONNIE JORDAN, | ) | Counts 1,56 |
| STEVEN PIRTLE, | ) | Counts 1,11,19 |
| SHELDON MITCHELL, | ) | Counts 1,7,9,10,12,13,50 |
| CHESTER WILSON, | ) | Counts 1,47,55,71,72 |
| ARVIS DUNBAR, | ) | Counts 1,25,26,27,31,78 |
| EUGENE DUNBAR, | ) | Counts 5,6 |
| MICHAEL SMITH, | ) | Counts 16,20 |
| TERRELLE MARION, | ) | Counts 77,81 |
| JERMAINE GAMBLE, | ) | Counts 79,80 |
| DENVER CARROLL III, and | ) | Count 82 |
| JOSEPH PEARSON, | ) | Count 59 |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

## COUNT 1
### (Conspiracy)

The Grand Jury charges that:

## BACKGROUND

At pertinent times relevant to this Indictment:

1.    All motor vehicles (hereinafter vehicle or automobile) required to be registered with federal and state authorities in order to use governmental roadways are required to have a Vehicle Identification Number (hereinafter VIN). A VIN is assigned by the manufacturer, is specific and unique to the vehicle, and is placed on plates and labels in various locations on the vehicle. Since 1981, a VIN is a seventeen-digit identification code, comprised of letters and numbers arranged in a sequence to identify specific information such as: in which country the vehicle was assembled, the assembly plant, the car line on which the vehicle was built, the sequence production number, the body type, the engine type, model year, and the restraint system installed.

2.    After purchasing a vehicle, a State of Missouri resident must obtain a Certificate of Ownership (title) and pay sales tax on that vehicle within 30 days. To obtain an original title on a new vehicle an individual must submit to the Missouri Department of Revenue, Motor Vehicle Bureau (DOR), an Application for Missouri Title and License (Form 108), proof of ownership, and a manufacturer's statement of origin. To obtain an original title on an used vehicle an individual must submit to DOR an application, pre-existing title from any state, any applicable lien releases, and, in certain counties, safety and emission inspections.

2

3. If a title becomes lost, stolen, mutilated, or destroyed, an application for a duplicate title must be submitted within five (5) days. An application is completed, signed, and notarized indicating the reason why the duplicate title is needed. If the duplicate title is requested due to mutilation of the original, the mutilated original must be included with the application. A notarized Lien Release (Form 4809) is required, if applicable. If filed, this would remove the lien holder's name from the title. The owner may indicate an address to which DOR should mail the duplicate title, which may be different than that on the original title.

4. There are other types of titles including repossession, mechanic lien and salvage. Repossession titles are issued to lien holders who have provided ten (10) days written notice to the owner and any other lien holder by First Class Mail of their intent to file for a repossession title, or obtained consent from all concerned parties to the repossession. An Application/Affidavit For Missouri Repossession Title (Form 5005) must be completed, signed, notarized, and submitted along with a document proving lien holder status, either a Notice of Lien Receipt (Forms 4809 or 108) or a copy of the actual title.

5. Mechanic lien titles can only be issued upon the perfection of a lien. To do this a completed, signed, and notarized Form 108 is filed along with the original or copy of the written request for labor, services, skill, materials, or storage costs, and a notarized affidavit certifying that the owner has defaulted on payment with DOR. In addition, certified receipts of notice letters to the owner and any lien holders, if applicable, must be submitted. Once received, DOR mails notice letters to registered owner/lien holders at the addresses provided by the applicant on the Form 108. If there is no response within thirty (30) days, DOR issues a mechanic lien title on the vehicle in the applicant's name.

6.     A vehicle is a salvage vehicle when it is damaged within seven (7) years of its model year to the point where repairs exceed eighty (80) percent of its fair market value.  To obtain a salvage title, a Form 108 must be completed, signed, and notarized and the original title must be submitted.  A salvage title may not be used for licensing a vehicle and thus a salvage vehicle may not be operated.  Original title for a salvage titled vehicle may be applied for by Form 108 when accompanied by a Vehicle Examination Certificate (Form-551) describing what repair work was performed and what parts were used on the vehicle.

7.     When an individual owner registers a vehicle with the State of Missouri, the owner is issued license plates.  Every vehicle operated on the highways of Missouri must be registered annually or every two years by the owner.  A licensed automobile dealer may be issued dealer license plates which may be transferred from dealer owned vehicle to dealer owned vehicle but must not be used for personal use.  Repair and service facilities may be issued drive-away license plates.  Drive-away license plates are strictly used for the purpose of transporting vehicles in transit and may not be used by tow truck operators transporting wrecked, disabled, abandoned, improperly parked, or burned vehicles.

8.     Every dealer and public garage operator, for a period of three (3) years, must keep a correct record of the name and address of the person delivering a vehicle, VIN, and odometer setting of all vehicles accepted for sale, storage, or repair.  Every dealer and public storage garage operator must report unclaimed vehicles to DOR if fifteen (15) days have expired since notification to owner, otherwise they forfeit claims for liens on storage.  Dealers, lien holders, and other qualified businesses may access DOR title and lien records online.

9. The Osage Nation is a Native American tribe that governs its own territory, coterminous with Osage County, Oklahoma, located in the north-central portion of the state. As part of its governmental functions, the Osage Nation registers and licenses vehicles for individuals of Osage Nation descent, residing within the jurisdiction of the Osage Nation. To obtain an Osage Nation title, an application must be made to the Osage Nation Tax Commission with proof of purchase or an endorsed pre-existing title. Before a title can be issued, the applicant must demonstrate, among other things: 1) Osage Nation membership, 2) residential requirements, and 3) automotive insurance coverage. The Osage Nation distinguishes between an original title, issued to the first purchaser of a new vehicle from an automobile dealer, and a transfer title, issued to a second or subsequent owner of a vehicle.

10. The State of Missouri commissions individuals upon application to be a notary, investing them with the authority to administer oaths and certify that document copies are true. Notaries are required to record all their official acts in a journal. For each notarial act, the journal should contain, among other things: the date, type of document, name and address of signer, and type of identification used by the signer. An oath must be administered to the person whose signature is being notarized and the signature must be in the presence of the notary. A notary who knowingly and willfully fails to comply with the above requirements commits official misconduct and is subject to revocation of commission.

11. The following are all financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC) or the National Credit Union Share Insurance Fund (NCUSIF): Allegiant Bank, Ally Financial (Ally), American Eagle Credit Union, AmeriCredit, BNY Midwest Trust Company (BNY Midwest Trust), Boulevard Bank, Capital One Auto Finance (Capital One), Chrysler Financial, Drive Financial Services (Drive Financial), Electro

5

Savings Credit Union, First Investors Financial Services (First Investors Financial), Ford Motor Credit Company (Ford Motor Credit), Gateway Metro Credit Union, Granite City Steel Federal Credit Union (GCS Federal Credit Union), General Motors Acceptance Corporation (GMAC), J.P. Morgan Chase Bank, N.A. (Chase Bank), Midwest Acceptance Corporation (Midwest Acceptance), National Auto Finance Company (National Auto Finance), Regions Bank, Santander Consumer USA, Inc. (Santander), Scott Credit Union, St. Louis Postal Credit Union, Universal Credit Acceptance, Inc. (Universal Credit Acceptance), Vantage Credit Union, Wells Fargo Financial (Wells Fargo), and West Community Credit Union.

12.   Automobile insurance in Missouri includes different types of coverage. "Property damage liability coverage" also known as "third-party property damage" covers claims submitted by third parties whose vehicle is damaged as a result of a collision caused by the insured. "Collision coverage" also known as "first-party property damage" covers damage to the insured's vehicle as a result of a collision with another vehicle or object, regardless of fault. "Comprehensive coverage" covers damage to a vehicle not caused by a collision, such as damage caused by a catastrophic event. In this Indictment, all types of coverage above are referred to as "property damage coverage" and claims submitted under these coverages are referred to as "property damage claims." In addition to covering damage to a vehicle, property damage coverage may also cover certain related expenses, such as medical bills, towing and storage fees, and rental car charges.

13.   The following are all insurance companies that offered automobile insurance, including property damage coverage, to businesses and individuals in Missouri: AAA Auto Club Inter-Insurance Exchange (AAA Insurance), American Family Mutual Insurance Company (American Family Insurance), American First Insurance, Country Preferred Insurance

Company (Country Insurance), Farmer's Insurance Company (Farmer's Insurance), Omni Insurance Company (Omni Insurance), Progressive Preferred Insurance (Progressive Insurance), Republic Western Insurance Company (Republic Western Insurance), Safeco Insurance Company of America (Safeco Insurance), and State Farm Mutual Automobile Insurance Company (State Farm Insurance). The companies referenced above are referred to collectively as insurance companies.

14. The following are all automobile dealers, dealerships, or auction houses operating in the St. Louis Metropolitan area in the Eastern District of Missouri: Auto Centers Nissan, Auto Plaza Maplewood (Auto Plaza), Copart, Inc. (Copart), Dave Mungenast Lexus, Fast Lane Classic Cars, Fifth Street Motors, Indy Motor Sports, Johnny Londoff Chevrolet, Ken's American Motors, Manheim St. Louis (Manheim), Marty Cancila Dodge, McMahon Lincoln-Mercury, Midrivers Lotus, Modern Auto Parts, OK Auto Sales (OK Auto), Paul Cerame Auto Group (Paul Cerame), ST Auto Sales (ST Auto), St. John Motor Company, St. Louis Car Credit, and Sunset Auto Company (Sunset Auto). Automobile dealerships referenced in this Indictment, operating outside the St. Louis Metropolitan area, are identified by city and state location the first time they appear.

**THE BUSINESSES**

15. The members of the conspiracy created and used several businesses associated with vehicle service, including repair, sales, storage, and towing which facilitated the criminal conduct charged herein. Several of the businesses had little to no operation outside the conduct of the conspiracy, but presented the façade of a fully operating venture. Several of the businesses did not register as required with the Missouri Secretary of State and several that did, continued to operate after their official dissolution by the Secretary of State. In addition,

the members of the conspiracy used derivative and additional business names at the primary business locations noted below (all addresses are St. Louis, Missouri unless otherwise noted):

    a.  SEDS Auto, Inc. (SEDS) – Formed for the purpose of automobile sales and repair, the corporate office was located at 11XXX Bellefontaine Road, the residential address of the mother of Shahadu Sutton. The business address was 13XX S. Florissant Road. The registered agent and president was Eugene Dunbar; Shahadu Sutton the vice-president, secretary, and treasurer. Sheldon Mitchell was later added to the Board of Directors.

    b.  3D Auto House – Formed for the purpose of providing automobile services, the corporate office and business was located at 36XX Cass Avenue. The registered agent was Tiffany Sutton; the owner was Arvis Dunbar.

    c.  A-1 Mo's Towing and Recovery, LLC (A-1 Mo's Towing) – Formed for the purpose of towing and recovery, the business location was 60XX Bermuda Road; the registered agent and owner was Morris Davis.

    d.  Fisher, Preston, Wess Salvage (Fisher, Preston, Wess) – Formed for the purpose of automobile repairs, sales, and towing with several business locations including 10XX Case Avenue and 25XX N. 22nd Street and was owned by, among others, Orlando Preston.

    e.  Majaluk Enterprises (Majaluk) – Formed for the purpose of graphic design and marketing, located at 60XX Calverton Park Lane and owned and operated by Sheldon Mitchell.

f.  Smith and Sons Auto and Rite Way Group – Formed for the purpose of automobile repair, located at 11XXX Riverview and then at 11XXX Midland, owned and operated by Michael Smith.

g.  R&R Auto – Formed for the purpose of automobile sales, primarily dealing in salvage vehicles, the business was located at 50XX Horner, Jefferson City, Missouri, and operated by Robert Reece.

h.  Exotic Auto – Formed for the purpose of automobile sales, its principal place of business was 31XX Lancaster Road, Dallas, Texas, and was owned and operated by Reginald Davis.  Various members of the conspiracy bought and sold vehicles as agents or representatives of Exotic Auto.

## THE DEFENDANTS

16.  Defendant Shahadu Sutton recruited and assisted straw purchasers to, and did himself, purchase vehicles from automobile dealerships with loans from financial institutions with no intention of fulfilling the loan obligations.  Defendant Shahadu Sutton, or a member of the conspiracy, then sold those vehicles.  Under the auspices of his businesses, Defendant Shahadu Sutton received vehicles which were stolen, misappropriated by members of the conspiracy, or voluntarily relinquished by individuals without the lien holder's consent and: 1) created false invoices for repair work never performed, then requested payment from the lien holder and/or falsely obtained mechanic lien title on the vehicles;  2) falsely obtained duplicate title on the vehicles; or 3) assisted other members of the conspiracy to do so, and then sold, or attempted to sell, the vehicles to businesses or persons not aware of the vehicle's theft.  Defendant Shahadu Sutton also staged accidents and collected insurance proceeds after filing false claims of loss with insurance companies.

17.   Defendant Tiffany Sutton, wife of defendant Shahadu Sutton, knowingly notarized false title applications, lien releases, and mechanic lien documents.  Defendant Tiffany Sutton recruited straw purchasers and drove and sold vehicles stolen or misappropriated by members of the conspiracy.

18.   Defendant Morris Davis, through his business, towed and stored vehicles to further the conspiracy and to evade law enforcement detection and identification of the vehicles involved. Defendant Morris Davis falsely made and notarized duplicate and mechanic lien title applications and falsely notarized lien releases.  Defendant Morris Davis also sold vehicles that had been stolen or misappropriated by members of the conspiracy.

19.   Defendant Orlando Preston operated a "chop shop" for the conspiracy.  Defendant Orlando Preston sold vehicles stolen by members of the conspiracy and obtained fraudulent Osage Nation titles on stolen vehicles through defendant William Smith.

20.   Defendant William Smith fraudulently obtained Osage Nation titles on vehicles stolen or misappropriated by members of the conspiracy.

21.   Defendant Reginald McNeary recruited and assisted "straw purchasers" to purchase vehicles for him and other members of the conspiracy, drove and sold vehicles stolen by members of the conspiracy, and staged (and recruited others to stage) accidents to falsely obtain insurance proceeds.

22.   Defendant Robert Reece received or purchased vehicles stolen or misappropriated by members of the conspiracy and then resold them through his business, helping to obfuscate the thefts.  Various members of the conspiracy acted as "agents" of R&R Auto to facilitate the theft and resale of vehicles.  Defendant Robert Reece himself drove vehicles stolen by the conspiracy.

23. Defendant John Hicks recruited and assisted "straw purchasers" to purchase vehicles for members of the conspiracy. Defendant John Hicks and his wife drove vehicles stolen by members of the conspiracy.

24. Defendant Reginald Davis recruited notaries to falsely notarize documents. Defendant Reginald Davis obtained the proceeds from the sale of some vehicles stolen by members of the conspiracy.

25. Defendant Randy Terrell recruited others to, and did himself, steal vehicles from out-of-state and Missouri automobile dealerships. Defendant Randy Terrell facilitated the sale of stolen vehicles by utilizing fraudulent titles from the State of Georgia. Defendant Randy Terrell obtained drive-away license plates that were used to disguise the stolen nature of several vehicles.

26. Defendant Lonnie Jordan recruited others to, and did himself, steal vehicles from out of state and Missouri automobile dealerships.

27. Defendants Steven Pirtle, Terrelle Marion, Jermaine Gamble and Denver Carroll III, drove and/or stored vehicles stolen by members of the conspiracy and, defendant Steven Pirtle through his business, towed vehicles involved in staged accidents.

28. Defendant Sheldon Mitchell manufactured and provided to members of the conspiracy fraudulent documents, such as: lien releases, emission inspections, bills of sale, titles, and earnings statements.

29. Defendant Chester Wilson drove and sold vehicles stolen by members of the conspiracy.

30. Defendant Arvis Dunbar created false invoices for repair work never performed on vehicles under his business which were submitted to DOR to falsely obtain, and attempt to

obtain, mechanic lien title on vehicles otherwise stolen or misappropriated by members of the conspiracy. Defendant Arvis Dunbar drove vehicles stolen by members of the conspiracy.

31. Defendant Eugene Dunbar acted as a "straw purchaser" obtaining vehicles by means of false statements and relinquished them to members of the conspiracy.

32. Defendant Michael Smith created false invoices for repair work which were submitted to DOR to falsely obtain and attempt to obtain mechanic lien titles on vehicles otherwise stolen or misappropriated by members of the conspiracy.

33. Defendant Joseph Pearson misappropriated vehicles for insurance fraud purposes and delivered them to members of the conspiracy.

## THE VEHICLES

34. The vehicles involved in the criminal activity referenced in this Indictment are fully described below. Each mention in the Indictment to a vehicle by number, (for example, Veh. 1) shall by reference and incorporation of the below list, be a complete description of the vehicle.

| # | YEAR | MAKE | MODEL | VIN |
|---|------|------|-------|-----|
| 1 | 2006 | PONTIAC | GRAND PRIX | 2G2WP552861281804 |
| 2 | 2000 | LAND ROVER | DISCOVERY | SALTY1540YA259173 |
| 3 | 2006 | CHEVROLET | CORVETTE | 1G1YY36U065124023 |
| 4 | 2007 | CADILLAC | ESCALADE | 1GYFK66857R366850 |
| 5 | 2004 | BMW | X5 | WBAEH73464B190772 |
| 6 | 2003 | INFINITY | G35 | JNKCV54E73M224282 |
| 7 | 2005 | BMW | X5 | 5UXFB53545LV12745 |
| 8 | 2006 | DODGE | MAGNUM | 2D8GV77316H275794 |
| 9 | 2008 | MERCEDES | S550 | WDDNG71X48A172405 |
| 10 | 2002 | CADILLAC | ESCALADE | 3GYEK63N82G206010 |

| 11 | 2006 | DODGE | CHARGER | 2B3KA43G86H530552 |
|---|---|---|---|---|
| 12 | 2004 | PONTIAC | GRAND PRIX | 2G2WS522341209019 |
| 13 | 2006 | BMW | 750 | WBAHL83506DT04816 |
| 14 | 2007 | CADILLAC | ESCALADE | 1GYFK63867R237102 |
| 15 | 2005 | CADILLAC | STS | 1G6DC67A150218985 |
| 16 | 2002 | MERCEDES | S500V | WDBNG75J22A294461 |
| 17 | 2007 | LINCOLN | MARK LT | 5LTPW18597FJ07782 |
| 18 | 2007 | CADILLAC | ESCALADE | 1GYEC63857R273890 |
| 19 | 2004 | BMW | 645CI | WBAEK73494B320027 |
| 20 | 2003 | FORD | MUSTANG | 1FAFP48Y13F300953 |
| 21 | 2006 | DODGE | DURANGO | 1D4HB48296F153298 |
| 22 | 2002 | CHEVROLET | BLAZER | 1GNDT13W62K225228 |
| 23 | 2002 | FORD | F-150 | 1FTRW073X2KD19421 |
| 24 | 2004 | GMC | YUKON | 1GKFK16T34J186942 |
| 25 | 2008 | CHEVROLET | SILVERADO | 3GCEC13078G242502 |
| 26 | 2008 | CHEVROLET | AVALANCHE | 3GNFK12328G201527 |
| 27 | 2001 | DODGE | VIPER | 1B3ER65E31V703049 |
| 28 | 2004 | FORD | EXPEDITION | 1FMPU15L54LB44770 |
| 29 | 2002 | CADILLAC | ESCALADE | 1GYEK63N62R104771 |
| 29A | 2002 | CADILLAC | ESCALADE | 1GYEK63N52R262518 |
| 30 | 2008 | CHEVROLET | IMPALA | 2G1WD58C489110098 |
| 31 | 2004 | LINCOLN | NAVIGATOR | 5LMFU28R84LJ23412 |
| 32 | 2006 | BMW | 750 | WBAHL83586DT01923 |
| 33 | 1999 | CHEVROLET | TAHOE | 1GNEC13R8XJ533707 |
| 34 | 1999 | FORD | EXPLORER | 1FMZU34E4XZA72288 |
| 35 | 2002 | BUICK | RENDEZOUS | 3G5DB03E02S573454 |
| 36 | 1985 | CHEVROLET | PICK UP | 1GCGC24M4FF330499 |
| 37 | 2006 | DODGE | CHARGER | 2B3KA53H06H340730 |
| 38 | 2008 | CHEVROLET | IMPALA | 2G1WD58C589161383 |

| 39 | 2008 | PONTIAC | GRAND PRIX | 2G2WP552781107001 |
|---|---|---|---|---|
| 40 | 2002 | FORD | PICK UP | 1FTRW07332KD47741 |
| 41 | 2007 | DODGE | CHARGER | 2B3LA43R87H815324 |
| 42 | 2010 | GMC | YUKON | 1GKUKMEF7AR127393 |
| 43 | 2011 | CADILLAC | ESCALADE | 3GYT4NEF3BG104339 |
| 44 | 2011 | FORD | F-250 | 1FT7W2BT7BEA78314 |
| 45 | 2011 | CHEVROLET | CAMARO | 2G1FK1EJ6B9119524 |
| 46 | 2011 | CADILLAC | ESCALADE | 1GYS4BEF2BR133177 |
| 47 | 2011 | GMC | YUKON | 1GKS2EEF7BR206576 |
| 48 | 2009 | AUDI | A8L | WAURV78T19A005521 |
| 49 | 2008 | JEEP | GRAND CHEROKEE | 1J8HR78378C183898 |
| 50 | 2011 | FORD | F150 | 1FTFW1E61BFB00779 |
| 51 | 2011 | HYUNDAI | SONATA | 5NPEB4AC5BH077842 |
| 52 | 2010 | DODGE | CHARGER | 2B3CA3CV0AH127882 |
| 53 | 2010 | DODGE | CHARGER | 2B3CA3CV5AH196440 |
| 54 | 2010 | CHEVROLET | CAMARO | 2G1FK1EJ3A9148669 |
| 55 | 2011 | CADILLAC | ESCALADE | 1GYS4CEF0BR130476 |
| 56 | 2008 | CADILLAC | EXT | 3GYFK62818G117047 |
| 57 | 2007 | FORD | F150 | 1FTPW14V17KA94669 |
| 58 | 2008 | FORD | EDGE | 2FMDK39C88BB33797 |
| 59 | | INTENTIONALLY | LEFT | BLANK |
| 60 | | INTENTIONALLY | LEFT | BLANK |
| 61 | | INTENTIONALLY | LEFT | BLANK |
| 62 | | INTENTIONALLY | LEFT | BLANK |
| 63 | | INTENTIONALLY | LEFT | BLANK |
| 64 | 2010 | FORD | F150 | 1FTFW1EV7AFA73836 |
| 64A | 2005 | FORD | F150 | 1FTPW14555FA74317 |
| 65 | 2005 | FORD | EXPEDITION | 1FMFU18575LA87451 |

| 66 | 2007 | MERCEDES | S550 | WDDNG71X37A069698 |
|---|---|---|---|---|
| 67 | 2010 | NISSAN | MAXIMA | 1N4AA51E2AC833969 |
| 68 | 2005 | FORD | F150 | 1FTPW12585FA40228 |
| 69 | 2005 | FORD | EXPEDITION | 1FMFU18545LA81364 |
| 70 | 2001 | LINCOLN | LS | 1LNHM87A01Y689461 |
| 70A | 2000 | LINCOLN | LS | 1LNHM87AXYY875471 |
| 71 | 2002 | MERCEDES | ML320 | 4JGAB54E52A348659 |
| 72 | 2006 | LAND ROVER | RANGE ROVER | SALME15406A217919 |
| 73 | 2008 | DODGE | CHARGER | 2B3KA73WX8H150978 |
| 74 | 2007 | JEEP | GRAND CHEROKEE | 1J8HR78347C512930 |
| 75 | 2002 | MERCEDES | CL600 | WDBPJ78JX2A020088 |
| 76 | 2000 | MERCEDES | CLK320 | WDBLK65G8YT032784 |
| 77 | 2004 | INFINITY | Q45 | JNKBF01A34M500973 |
| 78 | 2008 | FORD | F150 | 1FTRW14578FA54566 |
| 79 | 2007 | JAGUAR | XKR | SAJDA44B575B02221 |
| 80 | 2006 | DODGE | CHARGER | 2B3KA43G26H359653 |
| 81 | 2003 | PORSCHE | CAYENNE | WP1AC29P33LA90382 |
| 82 | 1998 | CADILLAC | STS | 1G6KY5495WU914370 |
| 83 | 2002 | BMW | 745I | WBAGL63442DP58715 |
| 84 | 2003 | MERCEDES | SL500 | WDBSK75F93F012107 |
| 85 | 2006 | LEXUS | G43 | JTHBN96S165003541 |
| 86 | 2004 | CHEVROLET | MONTE CARLO | 2G1WX12K649306621 |
| 87 | 2009 | DODGE | CHALLENGER | 2B3LJ74W89H582778 |
| 88 | | INTENTIONALLY | LEFT | BLANK |
| 89 | 2007 | FORD | F150 | 1FTPW14V87KD10145 |
| 90 | 2006 | LINCOLN | MARK LT | 5LTPW18546FJ02410 |
| 91 | | INTENTIONALLY | LEFT | BLANK |
| 92 | 2005 | INFINITY | G35 | JNKCV54E45M401096 |

| 93 | 2005 | BMW | 645CI | WBAEK73485B323017 |
|---|---|---|---|---|
| 94 | 2005 | FORD | F650 TOW TRUCK | 3FRNF65F25V132439 |
| 95 | 2004 | SAAB | STATION WAGON | YS3EB59E843502585 |
| 96 | 2004 | MAZDA | MX6 | JM1FE17N840137714 |
| 97 | 2000 | FORD | FOCUS | 3FAFP3134YR222686 |
| 98 | 2010 | CHEVROLET | IMPALA | 2G1WB5EK6A1196813 |
| 99 | 1998 | MERCEDES | CLK 320 | WDBLJ65G1WF017221 |
| 100 | 2001 | BMW | 325I | WBAAN374X1NJ13679 |
| 101 | 1999 | MERCEDES | CLK430 | WDBLJ70G6XF059088 |
| 102 | 1994 | CHEVROLET | CAPRICE | 1G1BN52P3RR202334 |
| 103 | 2006 | CHEVROLET | IMPALA | 2G1WT58K469314567 |
| 104 | 2005 | PONTIAC | GRAND PRIX | 2G2WP522651267936 |
| 105 | 2001 | FORD | MUSTANG | 1FAFP42X71F129588 |
| 106 | 2004 | CHEVROLET | SILVERADO | 1GCHK29114E124842 |
| 107 | 2003 | MERCURY | MARAUDER | 2MEHM75V23X666964 |
| 108 | 2005 | DODGE | NEON | 1B3ES56C65D203569 |
| 109 | 2007 | BMW | X3 | WBXPC93447WF28453 |
| 110 | 2011 | CHEVROLET | CAMARO | 2G1FJ3DJ3B9208175 |
| 111 | 2006 | JEEP | GRAND CHEROKEE | 1J4HR58206C361032 |
| 112 | 2011 | CHEVROLET | CAMARO | 2G1FK1EJ0B9166029 |
| 113 | 2006 | DODGE | CHARGER | 2B3KA43G96H102487 |
| 114 | 2005 | GMC | YUKON | 1GKFK66U35J241218 |
| 115 | 2008 | BMW | X3 | WBXPC93498WJ06130 |
| 116 | 2006 | NISSAN | MAXIMA | 1N4BA41E86CB52875 |
| 117 | 2010 | DODGE | CHARGER | 2B3CA3CV2AH234187 |
| 118 | 2002 | MERCEDES | S430V | WDBNG70J22A266554 |
| 119 | 2002 | JAGUAR | X TYPE | SAJEA51D02XC39919 |
| 120 | 2001 | PONTIAC | SUNFIRE | 1G2JB124117156971 |

| 121 | 1987 | MERCEDES | 300D | WDBEB33D2HA363565 |
| --- | --- | --- | --- | --- |
| 122 | 2001 | GMC | YUKON | 3GKFK16T81G181779 |
| 123 | 2002 | VOLKSWAGON | BEETLE | 3VWDD21C02M409056 |
| 124 | 2003 | MITSUBISHI | GALANT | 4A3AA46G93E062384 |
| 125 | 2010 | FORD | EXPEDITION | 1FMJU1J58AEB68686 |
| 126 | 2006 | LAND ROVER | RANGE ROVER | SALME15476A230439 |

## THE CONSPIRACY

35.  Beginning on an unknown date, but not earlier than March 1, 2005, and continuing

until the present date, in the Eastern District of Missouri and elsewhere,

**SHAHADU SUTTON,**
**TIFFANY SUTTON,**
**MORRIS DAVIS,**
**ORLANDO PRESTON,**
**WILLIAM SMITH,**
**REGINALD MCNEARY,**
**ROBERT REECE,**
**JOHN HICKS,**
**REGINALD DAVIS,**
**RANDY TERRELL,**
**LONNIE JORDAN,**
**STEVEN PIRTLE,**
**SHELDON MITCHELL,**
**CHESTER WILSON, and**
**ARVIS DUNBAR**

the defendants herein, did knowingly combine, conspire, confederate, and agree together and

with other individuals, known and unknown to this Grand Jury, to commit certain offenses

against the United States, including the following:

a.      to execute and intend to execute a scheme and artifice to defraud financial

institutions by material falsehoods, and to obtain moneys, funds and credits under the

custody and control of financial institutions, by submitting and causing to be submitted

materially false qualifying information and other fraudulent representations and by active

17

concealment of material facts to allow the conspirators to borrow funds to purchase new and used vehicles, in violation of Title 18, United States Code, Section 1344;

b.      to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, specifically to defraud persons, businesses, financial institutions and lien holders of their proprietary interest in vehicles, and for the purpose of executing the scheme and artifice, and attempting to do so, knowingly mailed items, and caused items to be delivered by United States mail, in violation of Title 18, United States Code, Section 1341;

c.      to knowingly transport, in interstate commerce, vehicles knowing the vehicles to have been stolen, in violation of Title 18, United States Code, Section 2312;

d.      to knowingly receive, possess, conceal, store, sell, and dispose of a vehicle having crossed a state boundary after being stolen, knowing the vehicle to have been stolen, in violation of Title 18, United States Code, Section 2313;

e.      to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, specifically to defraud persons and insurance companies, and for the purpose of executing the scheme and artifice, and attempting to do so, knowingly mailed and caused items to be delivered by United States mail, in violation of Title 18, United States Code, Section 1341.

**MANNER AND MEANS**

36. The means and methods by which the conspiracy was sought to be accomplished included, among others, the following:

**Bank Fraud**

a.      One or more of the defendants recruited "straw purchasers" to purchase typically high end new and used vehicles in the St. Louis, Missouri metropolitan area and elsewhere, with the understanding that the "straw purchasers" would receive something in value in exchange for relinquishing possession of the vehicles to members of the conspiracy.

b.      One or more of the defendants caused "straw purchasers" to, or the defendants themselves did, falsely represent their income, employers and addresses on credit applications submitted to automobile dealerships.

c.      One or more of the defendants produced and provided fraudulent earnings statements in the names of the "straw purchasers" in support of the credit applications mentioned above.

d.      The automobile dealerships, relying on the fraudulent statements made by the "straw purchasers," or the defendants themselves, on the credit applications, transmitted the information to the financial institutions.

e.      The "straw purchasers," or the defendants themselves, knowing at the time that they would not fulfill their obligations, entered into and signed purchase contracts with the automobile dealerships and entered into and signed loan security agreements with the financial institutions.

f.      One or more of the defendants instructed the "straw purchasers" not to, or they themselves did not, title, register or pay taxes on the purchased vehicle.

g.      The "straw purchasers," either immediately or shortly thereafter, allowed one or more of the defendants to obtain exclusive possession of the vehicle.

h.     The "straw purchasers," or the defendants themselves, defaulted on their loans either immediately or after a short payment history.

i.     One or more of the defendants instructed the "straw purchasers" to file for bankruptcy to avoid the collection efforts of the financial institutions. Many of the "straw purchasers" did, in fact, file for bankruptcy.

j.     One or more of the defendants, who fraudulently obtained vehicles by the manner above-described, either utilized the vehicles for their own purpose or traded, sold, or disposed of the vehicles.

k.     Various schemes, as further described in the paragraphs below, were utilized by one or more of the defendants to fraudulently obtain apparently legitimate title on the vehicles to facilitate the sale, trade, disposal, or use of the vehicles.

**Interstate Transportation of Motor Vehicles**

l.     One or more of the defendants would and did steal, and cause to be stolen, various vehicles, including luxury automobiles, sports utility vehicles, and pickup trucks from individuals and businesses, including automobile dealerships, in the Eastern District of Missouri and elsewhere, including in the states of Iowa, Illinois, and Indiana.

m.     One or more of the defendants would and did, or caused, the vehicles stolen from out-of-state automobile dealerships to be transported to the Eastern District of Missouri.

n.     One or more of the defendants would and did disable any tracking systems, like Onstar, on the stolen vehicles so that they couldn't be traced by law enforcement.

o.     Various schemes, as further described in the paragraphs below, were utilized by one or more of the defendants to fraudulently obtain apparently legitimate title on the

vehicles to facilitate the sale, trade, disposal, or use of the vehicles.

**Vehicle Title Fraud**

p.     One or more of the defendants would, and did, obtain vehicles either by bank

fraud as described above, by interstate theft, as described above, by intrastate theft, by

fraud, or from individuals who voluntarily relinquished their vehicles to the defendants

for various reasons including:  the individuals could no longer afford their monthly loan

payments for the vehicles, the individuals no longer wished to own their vehicles, and/or

the individuals sought to receive a cash payment.

q.     The individuals who relinquished vehicles to the defendants either abandoned the

vehicle without regard to their obligations to the lien holders, falsely reported the vehicle

stolen, or assisted by one or more of the defendants, falsely claimed to their lien holder

that the vehicle required mechanical work which they could not afford.  On some

occasions, the defendants forced individuals, who presented their vehicle for repair work

at businesses controlled by the defendants, to abandon their vehicle by falsely inflating

the cost of repair work performed on the vehicle.

r.     The defendants utilized several illegal methods to obtain apparent legitimate

ownership of the vehicles either voluntarily relinquished, stolen or misappropriated.  In

some cases, one or more of the defendants falsely applied for a mechanic lien title on the

vehicle by asserting that an individual refused to pay for mechanical or body work

performed on their vehicle (when, in fact, no such work was performed); in some cases,

one or more of the defendants falsely applied for a duplicate title on the vehicle by falsely

purporting to be the current or a previous owner of the vehicle living at an address

controlled by a member of the conspiracy and falsely asserting that the original title had

been lost, damaged, or destroyed, and; in some cases, one or more of the defendants falsely applied for an original title by submitting fraudulent out-of-state or a fraudulently obtained Osage Nation title and asserting that such vehicle had been purchased.

s.     One or more of the defendants, either themselves or by recruitment, falsely notarized the applications required to obtain a mechanic lien or duplicate title as described above. In some cases, in order to circumvent a lien holder's interest in a vehicle, one or more defendants submitted a false lien release which was also falsely notarized.

t.     The false applications mentioned above caused DOR to issue various original, mechanic lien, duplicate and salvage titles, and Osage Nation to issue transfer titles, and mail them to addresses in the Eastern District of Missouri as determined by the defendants.

u.     One or more of the individuals who voluntarily relinquished their vehicle to the defendants, filed for bankruptcy to avoid replevin actions, either on their own accord or because they were advised to do so by one or more of the defendants.

v.     Having obtained apparent legitimate ownership of the vehicle, the defendants would then either sell the vehicle to an unsuspecting third party or give the vehicle to an accomplice or another defendant or another individual who had voluntarily relinquished their own vehicle to the defendants.

**Insurance Fraud**

w.     One or more of the defendants fraudulently obtained money from insurance companies by insuring vehicles against theft and property damage (often stolen or

misappropriated by members of the conspiracy), and then making false theft and property damage claims with the insurance companies.

x.      It was part of the scheme to solicit people with pre-existing property damage coverage to file fraudulent claims with their insurance companies.

y.      One or more of the defendants caused others to, or did themselves, falsely report to police the theft of a vehicle which in fact was not stolen by an unknown party but was misappropriated by members of the conspiracy for the purpose of obtaining insurance proceeds.

z.      One or more of the defendants falsely created the appearance of an automobile accident, either single or multiple vehicle, by intentionally damaging the vehicles, or "staging" accidents, when in fact the vehicles involved were under the defendants' control and were not in accidents.

aa.     It was part of the scheme to falsely report to police as accidents the incidents described in the above paragraph.

bb.     It was part of the scheme to falsely complain of pain resulting from the incidents described in paragraph z and to request medical attention.

cc.     One or more of the defendants caused others to, or did themselves, make false property damage claims to the insurance companies requesting payment for these staged accidents and for medical issues that did not exist.

dd.     One or more of the defendants caused others to, or did themselves, submit to the insurance companies false and fictitious invoices, towing and storage bills, and other documents that fraudulently over inflated expenses related to property damage claims arising out of the staged accidents.

**Methods of Concealment**

ee.     One or more of the defendants caused others to, or did themselves, obtain title on a vehicle of a similar year, make, and model as a vehicle stolen or misappropriated by a member of the conspiracy and placed that vehicle's VIN on the stolen vehicle in an attempt to disguise the theft.

ff.     Members of the conspiracy placed license plates belonging to other vehicles and counterfeit licenses or temporary licenses on stolen vehicles in an attempt to disguise their theft.

gg.     Members of the conspiracy utilized drive-away and dealer license plates issued to businesses controlled by members of the conspiracy, which were placed on vehicles stolen or misappropriated by members of the conspiracy in an attempt to disguise the vehicles theft.

hh.     Individuals recruited by members of the conspiracy to assist in stealing or misappropriating vehicles in manners described above were compensated by receiving other vehicles which had been likewise stolen or misappropriated by members of the conspiracy.

## OVERT ACTS

37.     In furtherance of the conspiracy and to effect the objects of the conspiracy, the conspirators committed and caused the following overt acts:

a.     **VEH. 1**

1.     On or about December 31, 2007, SEDS (Shahadu Sutton) falsely applied for, and later received, a mechanic lien title on Veh. 1, sometime after it was reported stolen by its owner on July 21, 2007.

2.      On or about February 16, 2008, an individual possessed Veh. 1, sometime after receiving it from Shahadu Sutton.

b.      **VEH. 2**

1.      On or about September 2, 2008, Michael Smith falsely applied for a mechanic lien title on Veh. 2, sometime after it was reported stolen by its owner on February 26, 2008.  The application was rejected by DOR.  The vehicle was recovered by law enforcement at 11XXX Midland on October 31, 2008.

c.      **VEH. 3**

1.      On or about June 2, 2008, Eugene Dunbar presented to automobile dealership Master Cars, Granite City, Illinois, fraudulent earnings statements indicating he worked for Majaluk, which were produced by Sheldon Mitchell.

2.      On or about June 2, 2008, Eugene Dunbar entered into a loan agreement with GCS Federal Credit Union to finance $47,033.75 to purchase Veh. 3. Eugene Dunbar made no payments to GCS Federal Credit Union on this loan.

3.      On or about June 2, 2008, Eugene Dunbar purchased Veh. 3 from Master Cars.

4.      On or about September 9, 2008, Shahadu Sutton falsely applied for, and later received, a duplicate title on Veh. 3 in the name of a previous owner at 13XX S. Florissant.

5.      On or about June 2, 2009, Shahadu Sutton sold Veh. 3.

d.      **VEH. 4**

1.      On or about August 20, 2008, SEDS (Shahadu Sutton) falsely applied for, and later received, a mechanic lien title on Veh. 4, sometime after GMAC

initiated efforts to repossess Veh. 4 from its owner. The affidavit submitted with the application was notarized by Morris Davis.

2.    On or about November 4, 2008, Shahadu Sutton sold Veh. 4.

e.    **VEH. 5**

1.    On or about October 31, 2006, SEDS (Shahadu Sutton) falsely applied for, and later received, a mechanic lien title on Veh. 5, sometime after it was reported stolen by its owner on January 30, 2006. The affidavit submitted with the application was notarized by Morris Davis.

2.    On or about February 26, 2008, Shahadu Sutton sold Veh. 5

f.    **VEH. 6**

1.    On or about March 10, 2005, Michael Smith falsely applied for a mechanic lien title or Veh. 6, which was rejected by DOR.

2.    On or about August 21, 2007, Smith and Sons (Shahadu Sutton) falsely applied for, and later received, a mechanic lien title on Veh. 6.

3.    On or about April 24, 2008, Shahadu Sutton sold Veh. 6.

g.    **VEH. 7**

1.    On or about November 30, 2006, Tiffany Sutton possessed Veh. 7, sometime after its owner attempted to report it stolen on May 9, 2005.

2.    On or about March 21, 2007, SEDS (Shahadu Sutton) falsely applied for, and later received, a mechanic lien title on Veh. 7. The affidavit submitted with the application was notarized by Morris Davis.

3.    On or about September 25, 2007, Veh. 7 was sold.

h.   **VEH. 8**

1.   On or about January 14, 2008, SEDS (Shahadu Sutton) falsely applied for, and later received, a mechanic lien title on Veh. 8, submitted with a false lien release purporting to be from Chrysler Financial.

2.   Between February 25, 2008 and July 16, 2009, Shahadu Sutton sold Veh. 8.

i.   **VEH. 9**

1.   On or about December 24, 2009, 3D Auto House (Arvis Dunbar) falsely applied for, and later received, a mechanic lien title on Veh. 9, sometime after it was reported stolen by its owner on May 29, 2009. The affidavit submitted with the application was notarized by Morris Davis.

2.   On or about February 18, 2010, Shahadu Sutton relinquished Veh. 9 to law enforcement through his attorney.

j.   **VEH. 10**

1.   On or about December 23, 2009, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 10 and (2) a lien release purporting to be from Gateway Metro Credit Union, sometime after the owner relinquished Veh.10 to a member of the conspiracy. The duplicate title was applied for, and later received, in the name of the owner at 36XX Cass.

2.   On or about June 1, 2010, R&R Auto took possession of and later sold Veh. 10.

k. **VEH. 11**

1. On or about June 9, 2009, Tiffany Sutton falsely notarized an application for duplicate title on Veh. 11, sometime after its owner voluntarily relinquished it to Shahadu Sutton. The duplicate title was applied for, and later received, in the name of a previous owner at 36XX Cass.

2. On or about January 9, 2010, Shahadu Sutton sold Veh. 11.

l. **VEH. 12**

1. On or about December 23, 2009, Morris Davis falsely notarized an application for duplicate title on Veh. 12, submitted with a false lien release purporting to be from Boulevard Bank, sometime after the owner delivered Veh. 12 to A-1 Mo's Towing for repairs. The duplicate title was applied for, and later received, in the name of the owner at 36XX Cass.

2. On or about January 2, 2010, a member of the conspiracy sold Veh. 12.

m. **VEH. 13**

1. On or about January 21, 2009, Shahadu Sutton falsely applied for a loan to Capital One in the name of T.W..

2. On or about January 24, 2009, T.W. presented to Auto Plaza false earnings statements which were produced by Sheldon Mitchell.

3. On or about January 24, 2009, Shahadu Sutton and John Hicks induced T.W. to enter into a loan agreement with Capital One to finance $30,000.00 to purchase Veh. 13. T.W. did so at the direction of Shahadu Sutton and John Hicks with the understanding that Shahadu Sutton would be responsible for the loan obligations. No payments were made on this loan.

4.      On or about January 24, 2009, T.W. purchased Veh. 13 from Auto Plaza at the direction of Shahadu Sutton and John Hicks, and immediately relinquished possession to Shahadu Sutton.

5.      On or about July 29, 2009, 3D Auto House (Arvis Dunbar) falsely applied for, and later received, a mechanic lien title on Veh. 13. The affidavit submitted with the application was notarized by Tiffany Sutton.

6.      On or about September 24, 2009, Shahadu Sutton sold Veh. 13 through consignment with ST Auto.

n.      **VEH. 14**

1.      On or about January 2, 2009, Shahadu Sutton falsely applied for a loan to Capital One in the name of C.B..

2.      On or about January 10, 2009, C.B. presented to Dave Mungenast Lexus fraudulent earnings statements which were produced by Sheldon Mitchell.

3.      On or about January 10, 2009, Shahadu Sutton and John Hicks induced C.B. to enter into a loan agreement with Capital One to finance $37,159.00 to purchase Veh. 14. C.B. did so at the direction of Shahadu Sutton and John Hicks with the understanding that Shahadu Sutton would be responsible for the loan obligations. No payments were made on this loan.

4.      On or about January 10, 2009, C.B. purchased Veh. 14 from Dave Mungenast Lexus at the direction of Shahadu Sutton and John Hicks, and immediately relinquished possession to Shahadu Sutton.

5.	On or about July 29, 2009, 3D Auto House (Arvis Dunbar) falsely applied for, and later received, a mechanic lien title on Veh. 14. The affidavit submitted with the application was notarized by Tiffany Sutton.

6.	On or about August 9, 2010, Shahadu Sutton deposited a counterfeit check in the amount of $39,275.00 to an account at Regions Bank which was ostensibly the proceeds of his sale of Veh. 14 on that day.

7.	On or about July 26, 2011, Shahadu Sutton sold Veh. 14 to Indy Motor Sports.

o.	**VEH. 15**

1.	On or about January 29, 2010, V.W. presented to Auto Plaza fraudulent earnings statements which were produced by Sheldon Mitchell.

2.	On or about January 29, 2010, Shahadu Sutton and Tiffany Sutton induced V.W. to enter into a loan agreement with AmeriCredit to finance $15,899.00 to purchase Veh. 15. V.W. did so at the direction of Shahadu Sutton and Tiffany Sutton with the understanding that Shahadu Sutton would be responsible for the loan obligations. No payments were made on this loan.

3.	On or about January 29, 2010, V.W. purchased Veh. 15 from Auto Plaza at the direction of Shahadu Sutton, and immediately relinquished possession to Shahadu Sutton.

4.	On or about February 10, 2010, Morris Davis returned Veh. 15 to Auto Plaza with front end damage.

p.    **VEH. 16**

1.    On or about January 18, 2009, the owner of Veh. 16 reported it stolen at the direction of Shahadu Sutton, sometime after the owner voluntarily relinquished Veh. 16 to Shahadu Sutton without the permission of the lien holder, Vantage Credit Union.

2.    On or about January 21, 2010, Morris Davis filed a vehicle owner and lien holder notification (Form 4577) with DOR falsely stating that he towed Veh. 16 as abandoned property. Veh. 16 was recovered by law enforcement at A-1 Mo's Towing on January 26, 2010.

q.    **VEH. 17**

1.    On or about May 7, 2007, Shahadu Sutton and Tiffany Sutton induced E.L. to enter into a loan agreement with Ford Motor Credit to finance $33,453.99 to purchase Veh. 17. E.L. did so at the direction of Shahadu Sutton and Tiffany Sutton with the understanding that Shahadu Sutton would be responsible for the loan obligations. Although some payments were made on this loan, it did default.

2.    On or about May 7, 2007, E.L., at the direction of Shahadu Sutton, purchased Veh. 17 from McMahon Lincoln-Mercury, and immediately relinquished possession to Shahadu Sutton.

3.    On or about April 5, 2010, Shahadu Sutton and Tiffany Sutton obtained property damage coverage on Veh. 17 from Progressive Insurance.

4.    On or about June 1, 2010, Shahadu Sutton falsely claimed to be in a single car accident in Veh. 17, inducing Progressive Insurance to issue a check payable

to Shahadu Sutton in the amount of $10,372.32. Veh. 17 was repossessed by Ford Motor Credit at Shahadu Sutton's residence on December 14, 2010.

r.   **VEH. 18**

1.      On or about December 23, 2009, 3D Auto House (Arvis Dunbar) falsely applied for, and later received, a mechanic lien title on Veh. 18, sometime after Ally, the lien holder, attempted to repossess Veh. 18 from its owner. The application was notarized by Morris Davis.

2.      On or about February 2, 2010, Shahadu Sutton and Tiffany Sutton obtained property damage coverage on Veh. 18 from Progressive Insurance.

3.      On or about July 18, 2010, Shahadu Sutton falsely reported Veh. 18 stolen and filed a claim of loss to Progressive Insurance.

4.      On or about July 22, 2010, Shahadu Sutton and Tiffany Sutton applied for, and later received, original title on Veh. 18 claiming that Veh. 18 was purchased from Arvis Dunbar on January 14, 2010.

5.      On or about February 10, 2011, Shahadu Sutton sold Veh. 18.

s.   **VEH. 19**

1.      On or about July 1, 2009, K.S. voluntarily relinquished Veh. 19 to Shahadu Sutton without the permission of the lien holder, West Community Credit Union.

2.      On or about August 4, 2009, Shahadu Sutton mailed a mechanic lien notice to West Community Credit Union with an invoice attached, falsely claiming that 3D Auto House performed $17,170.93 worth of repairs to Veh. 19.

3. On or about December 9, 2009, West Community Credit Union mailed a check payable to 3D Auto House in the amount of $13,000.00 to prevent the issuance of a mechanic lien title. West Community Credit Union later took possession of Veh. 19.

t. **VEH. 20**

1. On or about September 8, 2008, K.S., at the direction of Reginald McNeary, falsely reported Veh. 20 as stolen, after K.S. voluntarily relinquished possession to Reginald McNeary without the permission of the lien holder, Capital One.

2. On or about October 30, 2008, Progressive Insurance, based on the claim of loss filed by K.S., mailed a check payable to Capital One in the amount of $9,775.00. Veh. 20 was unrecovered.

u. **VEH. 21**

1. On or about April 7, 2009, Steven Pirtle possessed Veh. 21, sometime after it was reported stolen by its owner on June 27, 2007.

v. **VEH. 22**

1. On or about April 7, 2009, Steven Pirtle possessed Veh. 22, sometime after it was reported stolen by its owner on June 26, 2008.

w. **VEH. 23**

1. On or about June 16, 2006, Morris Davis falsely notarized an application for duplicate title on Veh. 23, submitted with a false lien release purporting to be from First Investors Financial, sometime after the owner delivered Veh. 23 to A-1

Mo's Towing for repairs. The duplicate title was applied for, and later received, in the name of the owner at an address controlled by a member of the conspiracy.

2.     On or about September 20, 2006, Eugene Dunbar faxed a fraudulent repair bill in the amount of $9,355.17 for Veh. 23 to First Investors Financial.

3.     On or about December 26, 2006, a member of the conspiracy sold Veh. 23.

x.     **VEH. 24**

1.     On or about December 23, 2009, Morris Davis falsely notarized a duplicate title application for Veh. 24, sometime after the owner delivered Veh. 24 to A-1 Mo's Towing for repairs. The duplicate title was applied for, and later received, in the name of a previous owner at 36XX Cass.

y.     **VEH. 25**

1.     On or about July 28, 2009, Shahadu Sutton relinquished Veh. 25 to law enforcement through his attorney, sometime after it was reported stolen by Johnny Londoff Chevrolet on September 17, 2008.

z.     **VEH. 26**

1.     On or about July 24, 2009, Shahadu Sutton relinquished Veh. 26 to law enforcement through his attorney, sometime after it was reported stolen by Johnny Londoff Chevrolet on September 17, 2008.

aa.    **VEH. 27**

1.     On or about September 24, 2008, V.W. presented to Fast Lane Classic Cars fraudulent earnings statements which were produced by Sheldon Mitchell.

2. On or about September 24, 2008, Shahadu Sutton and Tiffany Sutton induced V.W. to enter into a loan agreement with Vantage Credit Union to finance $36,595.00 to purchase Veh. 27. V.W. did so at the direction of Shahadu Sutton with the understanding that Shahadu Sutton would be responsible for the loan obligations. No payments were made on this loan.

3. On or about September 24, 2008, V.W. purchased Veh. 27 from Fast Lane Classic Cars at the direction of Shahadu Sutton, and immediately relinquished possession to Shahadu Sutton.

4. On or about November 17, 2008, Shahadu Sutton, falsely applied for, and later received, duplicate title on Veh. 27, in the name of a previous owner at 13XX S. Florissant.

5. On or about October 28, 2008, Shahadu Sutton and Tiffany Sutton obtained property damage coverage from State Farm Insurance on Veh. 27.

6. On or about November 9, 2008, Shahadu Sutton fraudulently reported that he was involved in a single car accident while driving Veh. 27, inducing State Farm Insurance to issue a check payable to Shahadu Sutton in the amount of $38,916.50.

7. On or about January 22, 2009, Arvis Dunbar, on behalf of R&R Auto, bought Veh. 27. Veh. 27 was later exported to Canada on August 29, 2009.

bb. **VEH. 28**

1. On or about August 10, 2008, M.D., at the direction of Reginald Davis, notarized a false lien release on Veh. 28, purporting to be from Ford Motor Credit.

2.     On or about August 10, 2008, Morris Davis falsely notarized an application for duplicate title on Veh. 28, sometime after the owner submitted Veh. 28 for repairs at SEDS. The duplicate title was applied for, and later received, in the name of the owner at 13XX S. Florissant.

3.     On or about August 15, 2008, Shahadu Sutton sold Veh. 28 to T.P..

cc.  **VEH. 29**

1.     On or about May 28, 2008, Rite Way Group (Michael Smith) falsely applied for duplicate salvage title on Veh. 29, sometime after Veh. 29 was reported stolen by its owner. The duplicate salvage title was applied for, and later received, in the name of a previous owner at 11XXX Midland.

2.     On or about September 2, 2008, Shahadu Sutton sold Veh. 29 to Ken's American Motors using duplicate title issued on Veh. 29(a), sometime after Veh. 29(a) was voluntarily relinquished by A.W. to a member of the conspiracy without the permission of the lien holder, Electro Savings Credit Union.

dd.  **VEH. 30**

1.     On or about May 11, 2010, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 30, and (2) a false lien release purporting to be from BNY Midwest Trust, sometime after M.T. voluntarily relinquished Veh. 30 to Shahadu Sutton and Robert Reece without the permission of the lien holder, GMAC. The duplicate title was applied for, and later received, in the name of a previous owner, Hertz Vehicles LLC, at 99XX Lewis and Clark.

2. On or about July 1, 2010, Robert Reece obtained original title on Veh. 30 claiming he purchased it from Hertz Vehicles, LLC. Robert Reece sold Veh. 30 on August 6, 2010.

ee. **VEH. 31**

1. On or about March 23, 2010, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 31, and (2) a false lien release purporting to be from BNY Midwest Trust, sometime after the owner submitted Veh. 31 to A-1 Mo's Towing for repairs. The duplicate title was applied for, and later received, in the name of a previous owner, Hertz Vehicles, LLC at 99XX Lewis and Clark. Later Morris Davis gave Veh. 31 to K.D..

ff. **VEH. 32**

1. On or about June 7, 2010, Morris Davis falsely notarized an application for duplicate title on Veh. 32, sometime after the owner voluntarily relinquished Veh. 32 to Shahadu Sutton through a third party without the permission of the lien holder, Chrysler Financial. The duplicate title was applied for, and later received, in the name of a previous owner, Marty Cancila Dodge, at 99XX Lewis and Clark.

2. On or about June 30, 2010, Morris Davis falsely notarized an application for original title on Veh. 32 claiming he, on behalf of A-1 Auto, purchased Veh. 32 from Marty Cancila Dodge on June 15, 2010.

3. On or about November 27, 2010, Shahadu Sutton and Tiffany Sutton obtained property damage coverage on Veh. 32 from Omni Insurance.

4. On or about January 14, 2011, Reginald McNeary staged an accident directing K.Y. to deliberately drive a rented pickup truck into Veh. 32.

5. On or about January 26, 2011, Shahadu Sutton made a claim for loss resulting from the staged accident, inducing Omni Insurance to issue a check payable to R&R Auto and Shahadu Sutton in the amount of $9,999.63.

6. On or about April 19, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 32 and sold it on April 22, 2011.

gg. **VEH. 33**

1. On or about June 2, 2010, Morris Davis falsely notarized an application for duplicate title on Veh. 33, sometime after the owner voluntarily relinquished possession of Veh. 33 to a third party without the permission of the lien holder, Midwest Acceptance. The duplicate title was applied for, and later received, in the name of a previous owner, St. John Motor Company, at 99XX Lewis and Clark.

hh. **VEH. 34**

1. On or about April 26, 2010, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 34 and (2) a false lien release purporting to be from National Auto Finance, sometime after the owner abandoned Veh. 34. The duplicate title was applied for, and later received, in the name of the owner, at 99XX Lewis and Clark.

ii. **VEH. 35**

1.    On or about May 30, 2010, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 35 and (2) a false lien release purporting to be from Universal Credit Acceptance, sometime after Veh. 35 was stolen from the owner. The duplicate title was applied for, and later received, in the name of a previous owner, at 99XX Lewis and Clark.

jj. **VEH. 36**

1.    On or about May 5, 2010, Morris Davis falsely notarized an application for duplicate title on Veh. 36. The duplicate title was applied for, and later received, in the name of a previous owner, at 99XX Lewis and Clark.

kk. **VEH. 37**

1.    On or about May 10, 2010, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 37 and (2) a false lien release purporting to be from Chrysler Financial, sometime after the owner voluntarily relinquished Veh. 37 to Morris Davis without the permission of the lien holder, Chrysler Financial. The duplicate title was applied for, and later received, in the name of the owner, at 99XX Lewis and Clark.

2.    On or about May 18, 2010, Shahadu Sutton sold Veh. 37 through consignment with ST Auto.

ll. **VEH. 38**

1.    On or about June 21, 2010, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 38 and (2) a false lien release purporting to be from Wells Fargo, sometime after Veh. 38 was voluntarily relinquished to

Shahadu Sutton by M.T. without the permission of the lien holder, Wells Fargo. The duplicate title was applied for, and later received, in the name of the owner at 78XX N. Broadway.

2. On or about July 15, 2010, Robert Reece applied for, and later received, original title on Veh. 38, falsely claiming that he purchased Veh. 38 from the owner on July 11, 2010.

3. On or about July 27, 2010, Shahadu Sutton attempted to sell Veh. 38 through consignment with ST Auto.

mm. **VEH. 39**

1. On or about July 1, 2010, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 39 and (2) a false lien release purporting to be from Drive Financial, sometime after Veh. 39 was stolen from the owner. The duplicate title was applied for, and later received, in the name of the owner at 78XX N. Broadway.

2. On or about July 15, 2010, Robert Reece applied for original title on Veh. 39, falsely claiming that he purchased Veh. 39 from the owner on July 11, 2010.

3. On or about July 27, 2010, Shahadu Sutton attempted to sell Veh. 39 through consignment with ST Auto.

nn. **VEH. 40**

1. On or about December 22, 2009, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 40 and (2) a false lien release purporting to be from St. Louis Postal Credit Union, sometime after the owner submitted Veh.

40 to SEDS for repairs. The duplicate title was applied for, and later received, in the name of the owner at 36XX Cass.

2. On or about January 12, 2010, Shahadu Sutton sold Veh. 40 through consignment with OK Auto.

oo. **VEH. 42**

1. Between January 24, 2011 and January 26, 2011, a member of the conspiracy stole Veh. 42 from automobile dealership Lighthouse Automotive, Morton, Illinois.

2. On or about July 23, 2011, Arvis Dunbar possessed Veh. 42, with drive-away plates issued to T&S Auto (Randy Terrell), in the Eastern District of Missouri.

pp. **VEH. 43**

1. On or about February 23, 2011, a member of the conspiracy stole Veh. 43 from automobile dealership Brad Deery Motors, Maquoketa, Iowa.

2. On or about April 19, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 43.

3. On or about May 16, 2011, Chester Wilson, acting as an agent for Exotic Auto, sold Veh. 43 to Manheim utilizing the falsely obtained Osage Nation transfer title, claiming that he purchased Veh. 43 from William Smith on April 2, 2011. Manheim issued a check payable to Exotic Auto in the amount of $53,855.00 which was endorsed by Shahadu Sutton.

qq. **VEH. 44**

1. Between July 20, 2010 and August 12, 2010, a member of the conspiracy stole Veh. 44 from automobile dealership Mike Murphy Ford, Morton, Illinois.

2. On or about April 4, 2011, Chester Wilson sold Veh. 44 to Manheim. Manheim issued a check payable to Exotic Auto in the amount of $39,950.00 which was endorsed by Reginald Davis.

3. On or about April 19, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 44

4. On or about May 2, 2011, Chester Wilson presented the falsely obtained Osage Nation transfer title to Manheim, falsely claiming he had purchased Veh. 44 from William Smith on April 2, 2011.

rr. **VEH. 45**

1. Between January 3, 2011 and February 15, 2011, a member of the conspiracy stole Veh. 45 from automobile dealership Shottenkirk Automotive, Mt. Pleasant, Iowa.

2. On or about May 26, 2011, B.C. possessed Veh. 45 in the Eastern District of Missouri, with drive-away plates issued to a business associated with Robert Reece.

3. On or about July 20, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 45. On or about July 28, 2011, William Smith signed a DOR Form 768 falsely stating that he gave Veh. 45 to B.C. as a gift.

ss. **VEH. 46**

1.     Between May 9, 2011 and May 16, 2011, a member of the conspiracy stole Veh. 46 from automobile dealership Billion Auto, Iowa City, Iowa.

2.     On or about May 23, 2011, Randy Terrell submitted a false application for original title on Veh. 46 in the name of Allie Jordan.  Submitted with the application was a Form 768, ostensibly signed by Chris Jordan, falsely stating that he gave Allie Jordan Veh. 46 on April 17, 2011, attached to a fraudulent Georgia title indicating that Chris Jordan purchased Veh. 46 on April 17, 2011.  Veh. 46 was recovered on February 28, 2012 in California with a fraudulent VIN displayed.

tt. **VEH. 48**

1.     On or about April 28, 2011, a member of the conspiracy stole Veh. 48 from automobile dealership Palmer Dodge, Roswell, Georgia.

2.     On or about September 26, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 48.

3.     On or about September 29, 2011, Shahadu Sutton attempted to sell Veh. 48 to Manheim as an agent for R&R Auto.

uu. **VEH. 49**

1.     On or about July 11, 2011, Reginald McNeary stole Veh. 49 from its owner.

2.     On or about July 20, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 49.

3.     On or about July 26, 2011, Shahadu Sutton attempted to sell Veh. 49 to Copart as an agent of R&R Auto.

4.     On or about August 24, 2011, Shahadu Sutton possessed Veh. 49 in the Eastern District of Missouri.

vv.     **VEH. 50**

1.     On or about April 8, 2011, a member of the conspiracy stole Veh. 50 from automobile dealership Louis Lakis Ford, Galesburg, Illinois.

2.     On or about June 17, 2011, Shahadu Sutton sold Veh. 50 to Copart utilizing a fraudulent Georgia title which purported to document the purchase of Veh. 50 by Randy Terrell, T&S Auto Rebuilders, on May 23, 2011 and subsequent sale to Ron McNeary, R&R Auto on May 27, 2011.

ww.     **VEH. 51**

1.     On or about June 14, 2011, a member of the conspiracy stole Veh. 51 from automobile dealership Billion Hyundai, Iowa City, Iowa.

2.     On or about July 24, 2011, Jermaine Gamble possessed Veh. 51 in the Eastern District of Missouri.

xx.     **VEH. 52**

1.     On or about June 14, 2011, a member of the conspiracy stole Veh. 52 from Billion Hyundai.

2.     On or about July 24, 2011, Jermaine Gamble possessed Veh. 52 in the Eastern District of Missouri.

yy. **VEH. 53**

    1.    On or about June 14, 2011, a member of the conspiracy stole Veh. 53 from Billion Hyundai.

    2.    On or about September 18, 2011, W.L. possessed Veh. 53 in the Eastern District of Missouri.

zz. **VEH. 54**

    1.    On or about January 4, 2011, a member of the conspiracy stole Veh. 54 from Shottenkirk Automotive.

    2.    On or about January 21, 2011, Morris Davis purportedly sold Veh. 54 to John Hicks in the Eastern District of Missouri.

    3.    On or about February 26, 2011, John Hicks possessed Veh. 54 using drive-away plates assigned to S&S Auto.

aaa. **VEH. 56**

    1.    On or about May 11, 2011, a member of the conspiracy stole Veh. 56 from automobile dealership Marshall Pontiac, Clinton, Indiana.

    2.    On or about June 20, 2011, Terrelle Marion possessed Veh. 56 in the Eastern District of Missouri.

bbb. **VEH. 64**

    1.    Between May 9, 2011 and May 17, 2011, a member of the conspiracy stole Veh. 64 from automobile dealership J. Wilderman Autoplex, Mt. Carmel, Illinois.

2. On or about May 8, 2012, Denver Carroll III possessed Veh. 64 in the Eastern District of Missouri displaying the VIN from Veh. 64(a). Veh. 64(a) was previously purchased and owned by Denver Carroll III.

ccc. **VEH. 65**

1. On or about August 24, 2011, a member of the conspiracy stole Veh. 65 from Paul Cerame.

ddd. **VEH. 66**

1. Between February and March 2011, Reginald McNeary took possession of Veh. 66 from T.W., for the ostensible purpose of selling it.

2. On or about June 28, 2011, Robert Reece applied for, and later received, an original title on Veh. 66 utilizing a fraudulent Georgia title indicating that R&R Auto (Robert Reece) purchased Veh. 66 on June 28, 2011.

3. On June 30, 2011, Morris Davis possessed Veh. 66 in the Eastern District of Missouri.

eee. **VEH. 68**

1. On or about March 5, 2010, Morris Davis falsely notarized an application for duplicate title on Veh. 68, sometime after Veh. 68 was stolen from its owner on July 11, 2008. The duplicate title was applied for, and later received, in the name of American Family Insurance, at 51XX Washington.

2. On or about July 19, 2011, Robert Reece possessed Veh. 68 with drive-away plates issued to R&R Auto.

fff. **VEH. 70**

1.     On or about December 13, 2011, Randy Terrell stole Veh. 70 from Fifth Street Motors.

2.     On or about February 3, 2012, M.W., at the direction of Lonnie Jordan, made a false application for original title on Veh. 70(a), the VIN of which was placed on Veh. 70.

ggg. **VEH. 71**

1.     On or about April 19, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 71, sometime after the owner, a relative of Shahadu Sutton, stopped making payments to the lien holder, Wells Fargo.

2.     On or about May 6, 2011, Shahadu Sutton sold Veh. 71 to Copart utilizing the Osage Nation transfer title which indicated that R&R Auto purchased Veh. 71 from William Smith.

hhh. **VEH. 73**

1.     On or about February 15, 2012, Reginald McNeary stole Veh. 73 from Auto Plaza.

2.     On or about March 29, 2012, Reginald McNeary possessed Veh. 73 in the Eastern District of Missouri.

iii. **VEH. 75**

1.     On or about August 11, 2010, Reginald McNeary induced R.G. to enter into a loan agreement with American Eagle Credit Union to finance $17,243.00 to purchase Veh. 75. R.G. did so at the direction of Reginald McNeary with the

understanding that Reginald McNeary would be responsible for the loan obligations. Although some payments were made on this loan, it did default.

2.      On or about August 11, 2010, R.G. purchased Veh. 75 from Auto Plaza at the direction of Reginald McNeary and immediately relinquished possession to Reginald McNeary.

3.      On or about October 6, 2010, Reginald McNeary obtained property damage coverage on Veh. 75 from Farmer's Insurance.

4.      On or about December 28, 2010, Reginald McNeary intentionally damaged Veh. 75 and falsely made a claim for loss, inducing Farmer's Insurance to issue a check payable to Reginald McNeary and Bills Automotive in the amount of $6,740.50.

5.      On or about March 16, 2012, William Smith falsely obtained an Osage Nation transfer title on Veh. 75.

6.      On or about April 11, 2012, N.B., at the direction of Reginald McNeary, applied for, and later received, an Illinois title on Veh. 75 utilizing the falsely obtained Osage Nation transfer title, falsely claiming that he purchased Veh. 75 from William Smith. Veh. 75 was repossessed by American Eagle Credit Union on or about May 11, 2012.

jjj.    **VEH. 78**

1.      On or about January 15, 2009, C.B. presented to Sunset Auto, fraudulent earnings statements which were produced by Sheldon Mitchell.

2.      On or about January 15, 2009, Shahadu Sutton and John Hicks induced C.B. to enter into a loan agreement with Ford Motor Credit to finance $35,732.50

to purchase Veh. 78. C.B. did so at the direction of Shahadu Sutton and John Hicks with the understanding that Shahadu Sutton would be responsible for the loan obligations. No payments were made on this loan.

3.     On or about January 15, 2009, C.B. purchased Veh. 78 from Sunset Auto at the direction of Shahadu Sutton and John Hicks, and immediately relinquished possession to Shahadu Sutton.

4.     On or about May 1, 2009, Shahadu Sutton submitted to Ford Motor Credit a repair bill from 3D Auto House falsely claiming that $12,419.54 worth of repairs was performed on Veh. 78.

5.     On or about May 7, 2009, Shahadu Sutton released Veh. 78 to Ford Motor Credit after receiving a check payable to S&S Auto in the amount of $14,869.00.

kkk.     **VEH. 79**

1.     On or about September 16, 2011, Reginald McNeary induced T.S. to enter into a loan agreement with Scott Credit Union to finance $52,212.00 to purchase Veh. 79. T.S. did so at the direction of Reginald McNeary with the understanding that Reginald McNeary would be responsible for the loan obligations. No payments were made on this loan. Veh. 79 was unrecovered.

2.     On or about September 16, 2011, T.S. purchased Veh. 79 from Auto Plaza at the direction of Reginald McNeary and immediately relinquished possession to Reginald McNeary.

3.     On or about March 5, 2012, Reginald McNeary intentionally damaged Veh. 79.

lll. **VEH. 80**

1.      On or about April 11, 2008, A-1 Mo's Towing (Morris Davis), falsely applied for salvage title on Veh. 80 and, falsely notarized an abandoned property affidavit, Form 4756, submitted in support, claiming that Morris Davis recovered Veh. 80 as abandoned property, sometime after the owner relinquished possession of Veh. 80 to Morris Davis.

2.      On or about June 26, 2008, Morris Davis reported Veh. 80 stolen to Breckenridge Police Department.

3.      On or about August 19, 2008, Shahadu Sutton sold Veh. 80 to St. Louis Car Credit.

mmm. **VEH. 81**

1.      On or about November 10, 2008, Reginald McNeary induced K.S. to enter into a loan agreement with Vantage Credit Union to finance $28,885.00 to purchase Veh. 81. K.S. did so at the direction of Reginald McNeary with the understanding that Reginald McNeary would be responsible for the loan obligations. Although some payments were made on this loan, it did default.

2.      On or about November 10, 2008, K.S. purchased Veh. 81 from Midrivers Lotus at the direction of Reginald McNeary, and immediately relinquished possession to Reginald McNeary.

3.      On or about January 18, 2009, Reginald McNeary staged an accident with Veh. 81 and K.Y.. Reginald McNeary induced K.Y. to file a claim for loss with Republic Western Insurance. The claim was not paid. Veh. 81 was repossessed by Vantage Credit Union on or about September 15, 2009.

nnn. **VEH. 83**

1.     On or about June 6, 2006, Morris Davis falsely notarized an application for duplicate title on Veh. 83, submitted with a false lien release purporting to be from Allegiant Bank. The duplicate title was applied for, and later received, in the name of the owner at 13XX S. Florissant.

2.     On or about July 10, 2006, SEDS (Shahadu Sutton) applied for, and later received, original title on Veh. 83, claiming to have purchased Veh. 83 from Morris Davis on June 12, 2006. Morris Davis claimed to have purchased Veh. 83 from the owner on June 10, 2006.

3.     On or about February 6, 2007, Shahadu Sutton traded Veh. 83 to automobile dealership Auto Centers Nissan, Alton, Illinois in order to purchase Veh. 84.

ooo. **VEH. 84**

1.     On or about February 6, 2007, Shahadu Sutton entered into a loan agreement with Capital One to finance the remaining $26,557.00 due after trading in Veh. 83 to purchase Veh. 84. Shahadu Sutton made no payments to Capital One on this loan. Veh. 84 was unrecovered.

2.     On or about February 6, 2007, Shahadu Sutton purchased Veh. 84 from Auto Centers Nissan.

ppp. **VEH. 85**

1.     On or about May 31, 2008, Eugene Dunbar presented to Johnny Londoff Chevrolet fraudulent earnings statements indicating that he worked for Majaluk, which were produced by Sheldon Mitchell.

2.	On or about May 31, 2008, Eugene Dunbar entered into a loan agreement with Chase Bank to finance $47,225.00 to purchase Veh. 85. Eugene Dunbar made only one payment to Chase Bank on this loan. Veh. 85 was repossessed by Chase Bank on December 23, 2008.

3.	On or about May 31, 2008, Eugene Dunbar purchased Veh. 85 from Johnny Londoff Chevrolet.

qqq.	**VEH. 86**

1.	On or about March 28, 2007, Chester Wilson purchased Veh. 86.

2.	On or about February 23, 2010, Chester Wilson obtained property damage coverage on Veh. 86 from State Farm Insurance.

3.	On or about March 18, 2010, Veh. 86 was involved in an accident.

4.	On or about March 19, 2010, Chester Wilson filed a claim of loss inducing State Farm Insurance to issue a check payable to Chester Wilson and G.J. in the amount of $1,580.92.

5.	On or about March 24, 2011, Fisher, Preston, Wess (Orlando Preston) applied for salvage title on Veh. 86, claiming he purchased Veh. 86 from Chester Wilson. DOR rejected the application.

6.	On or about July 20, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 86.

7.	On or about December 5, 2011, Tiffany Sutton applied for, and later received, an original title on Veh. 86 claiming that William Smith gave Veh. 86 to her as a gift on December 3, 2011.

8.	On or about August 4, 2012, Tiffany Sutton sold Veh. 86.

rrr.    **VEH. 89**

1.      Between February 3, 2011 and February 4, 2011, a member of the conspiracy stole Veh. 89 from automobile dealership Tom Boland Ford, Hannibal, Missouri.

2.      On or about March 19, 2011, Reginald McNeary possessed Veh. 89, with drive-away plates issued to Fisher, Preston, Wess, in the Eastern District of Missouri.

sss.    **VEH. 90**

1.      On or about January 24, 2009, Shahadu Sutton and John Hicks induced T.W. to attempt to enter into a loan agreement with Santander to finance $24,599.00 to purchase Veh. 90. T.W. did so at the direction of Shahadu Sutton and John Hicks with the understanding that Shahadu Sutton would be responsible for the loan obligations. The loan was voided by Santander.

2.      On or about January 24, 2009, T.W. attempted to purchase Veh. 90 from Paul Cerame at the direction of Shahadu Sutton and John Hicks, and immediately relinquished possession to Shahadu Sutton.

3.      On or about April 7, 2009, Steven Pirtle possessed Veh. 90 in the Eastern District of Missouri.

ttt.    **VEH. 93**

1.      On or about May 19, 2008, Reginald McNeary induced M.P. to enter into a loan agreement with Electro Savings Credit Union to finance $59,669.00 to purchase Veh. 93. M.P. did so at the direction of Reginald McNeary with the

understanding that Reginald McNeary would be responsible for the loan obligations. After two payments, no further payments were made on this loan.

2. On or about May 19, 2008, M.P. purchased Veh. 93 from Midrivers Lotus at the direction of Reginald McNeary, and immediately relinquished possession to Reginald McNeary.

uuu. **VEH. 95**

1. On or about March 4, 2011, Fisher, Preston, Wess purchased Veh. 95 from Modern Auto Parts.

2. On or about March 16, 2011, S.M. obtained property damage coverage on Veh. 95 from Farmer's Insurance at the direction of Reginald McNeary.

3. On or about April 29, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 95.

4. On or about May 16, 2011, Reginald McNeary staged an accident with Veh. 95 on Harney Street. Veh. 95 was later towed to Fisher, Preston, Wess.

5. On or about May 17, 2011, Reginald McNeary directed S.M. to file a claim for loss on Veh. 95 inducing Farmer's Insurance to issue a check payable to S.M. in the amount of $5,251.00.

6. On or about June 13, 2011, a member of the conspiracy applied for salvage title on Veh. 95 in the name of S.M. utilizing the Osage Nation transfer title that falsely indicated that S.M. purchased Veh. 95 from William Smith.

vvv. **VEH. 96**

    1.    On or about September 6, 2011, Reginald McNeary staged an accident between Veh. 96 and Veh. 97 on Harney Street, sometime after receiving Veh. 96 from T.S..

www. **VEH. 97**

    1.    On or about March 3, 2011, Reginald McNeary, as an agent for Fisher, Preston, Wess, purchased Veh. 97.

    2.    On or about June 20, 2011, Reginald McNeary purchased Veh. 97 from Fisher, Preston, Wess.

    3.    On or about June 21, 2011, Reginald McNeary applied for, and later received, salvage title on Veh. 97.

    4.    On or about September 6, 2011, Reginald McNeary staged an accident between Veh. 96 and Veh. 97 on Harney Street. Reginald McNeary falsely filed a claim of loss inducing Safeco Insurance to issue a check payable to Richard McNeary in the amount of $4,046.82.

xxx. **VEH. 99**

    1.    On or about August 28, 2010, Reginald McNeary staged an accident with Veh. 99 on Harney Street. The owner of Veh. 99 was J.Z..

    2.    On or about August 29, 2010, J.Z. filed a claim of loss on Veh. 99 inducing American Family Insurance to issue a check payable to J.Z. in the amount of $2,085.60.

yyy. **VEH. 104**

   1.    On or about January 1, 2011, Orlando Preston possessed Veh. 104 in the Eastern District of Missouri, sometime after it was stolen from its owner on November 14, 2010.

   2.    On or about September 26, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 104.

zzz. **VEH. 108**

   1.    On or about September 4, 2012, William Smith falsely obtained an Osage Nation transfer title on Veh. 108, sometime after it was stolen from its owner on July 16, 2012.

   2.    On or about September 15, 2012, Veh. 108 was recovered from C.K. sometime after he purchased it from Orlando Preston.

aaaa. **VEH. 111**

   1.    On or about July 15, 2010, Morris Davis falsely notarized (1) an application for duplicate title on Veh. 111 and (2) a lien release purporting to be from Chrysler Financial, sometime after the lien holder, Santander, attempted to repossess Veh. 111. The duplicate title was applied for, and later received, in the name of a previous owner at 50XX Horner, Jefferson City, Missouri.

   2.    On or about August 20, 2010, Morris Davis relinquished possession of Veh. 111 to Santander.

bbbb. **VEH. 112**

    1.      Between May 3, 2011 and June 24, 2011, a member of the conspiracy stole Veh. 112 from automobile dealership Patriot GM Motors, Princeton, Indiana.

    2.      On or about August 19, 2011, Randy Terrell and Terrelle Marion possessed Veh. 112 in the Eastern District of Missouri.

cccc. **VEH. 114**

    1.      On or about June 10, 2011, William Smith falsely obtained an Osage Nation transfer title on Veh. 114, sometime after the son of its owner voluntarily relinquished it to Shahadu Sutton.

    2.      On or about June 24, 2011, Shahadu Sutton sold Veh. 114 through consignment with Copart.

dddd. **VEH. 116**

    1.      On or about July 11, 2012, William Smith falsely obtained an Osage Nation transfer title on Veh. 116, sometime after it was stolen from its owner on June 30, 2012.

    2.      On or about July 18, 2012, Shahadu Sutton attempted to sell Veh. 116 on consignment through C.S..

All in violation of, and punishable under, Title 18, United Section Code, Section 371.

## COUNTS TWO THROUGH FIFTEEN
**(Bank Fraud)**

The Grand Jury further charges that:

38.   The allegations contained in paragraphs 1 through 34 of the Indictment are realleged and incorporated herein by reference as if fully set forth.

39.   Beginning on or about August 1, 2006 and continuing until the present, in the Eastern

District of Missouri, and elsewhere,

**SHAHADU SUTTON,**
**TIFFANY SUTTON,**
**MORRIS DAVIS,**
**REGINALD MCNEARY,**
**JOHN HICKS,**
**SHELDON MITCHELL,**
**STEVEN PIRTLE, and**
**EUGENE DUNBAR,**

the defendants herein, did knowingly and willfully execute and attempt to execute a scheme and

artifice to defraud various financial institutions by material falsehoods, whose deposits were

insured by the Federal Deposit Insurance Corporation, and to obtain money and property owned

by and under the custody and control of various financial institutions, all by means of materially

false and fraudulent pretenses, representations, and promises, as well as by active concealment of

material facts, well knowing and having reason to know that said pretenses, representations, and

promises were and would be false, and that such active concealment of facts, were and would be

material.

## THE SCHEME

40.   The scheme and artifice to defraud and to obtain money by means of materially false

and fraudulent representations and pretenses is more particularly described as follows:

41.   The Grand Jury realleges and incorporates by reference paragraphs 36a through 36k of

the Indictment as if fully set forth herein.

## EXECUTION OF THE SCHEME

42.   On or about the dates listed below in Column B, in the Eastern District of Missouri and

elsewhere, the defendants identified in Column G, aided and abetted by each other, and others,

both known and unknown to the Grand Jury, having devised and intending to devise the

aforesaid scheme and artifice to defraud and to obtain moneys by means of materially false and fraudulent pretenses, representations, and promises, from the custody and control of the below-listed financial institutions in Column F, as defined in Title 18, United States Code, Section 20, did knowingly execute, and attempt to execute, the aforesaid scheme by submitting, or causing others to submit, credit applications and signing security agreements, with materially false and fraudulent pretenses, representations, and statements to the financial institutions for a loan in the amount listed in Column E, for the purchase of a vehicle, listed in Column C, from the automobile dealership listed in Column D.

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Count | Date of Application | Vehicle | Automobile Dealership | Amount of Loan | Financial Institution | Defendants |
| TWO | 2/6/07 | Veh. 84 | Auto Centers Nissan | $26,557.00 | Capital One | Shahadu Sutton |
| THREE | 5/7/07 | Veh. 17 | McMahon Lincoln-Mercury | $33,453.99 | Ford Motor Credit | Shahadu Sutton Tiffany Sutton |
| FOUR | 5/19/08 | Veh. 93 | Midrivers Lotus | $59,669.00 | Electro Savings | Reginald McNeary |
| FIVE | 5/31/08 | Veh. 85 | Johnny Londoff | $47,225.00 | Chase Bank | Eugene Dunbar |
| SIX | 6/2/08 | Veh. 3 | Master Cars | $47,033.75 | GCS Federal Credit Union, | Eugene Dunbar |
| SEVEN | 9/24/08 | Veh. 27 | Fast Lane Classic Cars | $36,595.00 | Vantage Credit Union | Shahadu Sutton Tiffany Sutton Sheldon Mitchell |
| EIGHT | 11/10/08 | Veh. 81 | Midrivers Lotus | $28,885.00 | Vantage Credit Union | Reginald McNeary |
| NINE | 1/10/09 | Veh. 14 | Dave Mungenast Lexus | $37,159.00 | Capital One | Shahadu Sutton Tiffany Sutton John Hicks Sheldon Mitchell |
| TEN | 1/15/09 | Veh. 78 | Sunset Auto | $35,732.50 | Ford Motor Credit | Shahadu Sutton John Hicks Sheldon Mitchell |
| ELEVEN | 1/24/09 | Veh. 90 | Paul Cerame | $24,200.00 | Santander | Shahadu Sutton John Hicks Steven Pirtle |

| TWELVE | 1/24/09 | Veh. 13 | Auto Plaza | $30,000.00 | Capital One | Shahadu Sutton Tiffany Sutton John Hicks Sheldon Mitchell |
|---|---|---|---|---|---|---|
| THIRTEEN | 1/29/10 | Veh. 15 | Auto Plaza | $15,899.00 | AmeriCredit | Shahadu Sutton Tiffany Sutton Morris Davis Sheldon Mitchell |
| FOURTEEN | 8/11/10 | Veh. 75 | Auto Plaza | $17,243.00 | American Eagle Credit Union | Reginald McNeary |
| FIFTEEN | 9/16/11 | Veh. 79 | Auto Plaza | $52,212.00 | Scott Credit Union | Reginald McNeary |

43. All in violation of, and punishable under, Title 18, United States Code, Sections 1344 and 2.

## COUNTS SIXTEEN THROUGH FIFTY-EIGHT
### (Mail Fraud)

The Grand Jury further charges that:

44. The allegations contained in paragraphs 1 through 34 of the Indictment are realleged and incorporated herein by reference as if fully set forth.

45. From on or about May 1, 2009 and continuing until the present date, in the Eastern District of Missouri,

**SHAHADU SUTTON,
TIFFANY SUTTON,
MORRIS DAVIS,
ORLANDO PRESTON,
WILLIAM SMITH,
REGINALD MCNEARY,
ROBERT REECE,
JOHN HICKS,
REGINALD DAVIS,
RANDY TERRELL,
LONNIE JORDAN,
SHELDON MITCHELL,
CHESTER WILSON
ARVIS DUNBAR,
STEVEN PIRTLE, and
MICHAEL SMITH,**

the defendants herein, aided and abetted by each other, together with others known and unknown to the Grand Jury, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud owners and lien holders of their proprietary interest in vehicles and obtain money by means of false and fraudulent pretenses and representations.

## THE SCHEME

46. The scheme and artifice to defraud and to obtain money by means of materially false and fraudulent representations is more particularly described as follows:

47. The grand jury realleges and incorporates by reference, paragraph 36p through 36v of the Indictment as if fully set forth herein.

## EXECUTION OF THE SCHEME

48. On or about the dates listed in Column B, the defendants listed in Column E, for the purpose of executing the scheme and artifice and attempting to do so, knowingly mailed and caused to be delivered by United States mail the items described in Column C, (the asterisk * symbol in Column C indicates that the item was mailed and the absence of an asterisk indicates that the item was delivered by mail, all in the Eastern District of Missouri) with regard to fraud perpetrated concerning the vehicles listed in Column D.

| A<br>Count | B<br>Date of Mailing | C<br>Item Mailed | D<br>Vehicle | E<br>Defendants |
|---|---|---|---|---|
| SIXTEEN | 5/30/08 | DOR Duplicate Salvage Title | Veh. 29 | Shahadu Sutton<br>Michael Smith |
| SEVENTEEN | 6/12/08 | DOR Salvage Title | Veh. 80 | Shahadu Sutton<br>Morris Davis |
| EIGHTEEN | 8/21/08 | DOR Duplicate Title | Veh. 28 | Shahadu Sutton<br>Morris Davis<br>Reginald Davis |
| NINETEEN | 9/9/08 | DOR Duplicate Title | Veh. 3 | Shahadu Sutton<br>Steven Pirtle |

| A<br>Count | B<br>Date of<br>Mailing | C<br>Item Mailed | D<br>Vehicle | E<br>Defendants |
|---|---|---|---|---|
| TWENTY | 9/12/08 | Mechanic Lien Title Notice to 49XX Margaretta * | Veh. 2 | Michael Smith |
| TWENTY-ONE | 10/30/08 | DOR Mechanic Lien Title | Veh. 4 | Shahadu Sutton<br>Morris Davis |
| TWENTY-TWO | 11/26/08 | DOR Duplicate Title | Veh. 27 | Shahadu Sutton |
| TWENTY-THREE | 6/16/09 | DOR Duplicate Title | Veh. 11 | Shahadu Sutton<br>Tiffany Sutton |
| TWENTY-.FOUR | 8/4/09 | Mechanic Lien Notice to West Community Credit Union * | Veh. 19 | Shahadu Sutton |
| TWENTY-FIVE | 9/11/09 | DOR Mechanic Lien Title | Veh. 13 | Shahadu Sutton<br>Tiffany Sutton<br>Arvis Dunbar |
| TWENTY-SIX | 9/11/09 | DOR Mechanic Lien Title | Veh. 14 | Shahadu Sutton<br>Tiffany Sutton<br>Arvis Dunbar |
| TWENTY-SEVEN | 12/24/09 | DOR Mechanic Lien Title | Veh. 9 | Shahadu Sutton<br>Morris Davis<br>Arvis Dunbar |
| TWENTY-EIGHT | 12/28/09 | DOR Duplicate Title | Veh. 12 | Morris Davis |
| TWENTY-NINE | 12/30/09 | DOR Duplicate Title | Veh. 10 | Morris Davis<br>John Hicks |
| THIRTY | 12/31/09 | DOR Duplicate Title | Veh. 40 | Shahadu Sutton<br>Morris Davis |
| THIRTY-ONE | 1/4/10 | DOR Mechanic Lien Title | Veh. 18 | Shahadu Sutton<br>Tiffany Sutton<br>Morris Davis<br>Arvis Dunbar |
| THIRTY-TWO | 1/6/10 | DOR Duplicate Title | Veh. 24 | Morris Davis |
| THIRTY-THREE | 1/21/10 | Mechanic Lien Notice to AAA * | Veh. 16 | Shahadu Sutton<br>Morris Davis |
| THIRTY-FOUR | 4/29/10 | DOR Duplicate Title | Veh. 31 | Shahadu Sutton<br>Morris Davis |
| THIRTY-FIVE | 4/29/10 | DOR Duplicate Title | Veh. 34 | Morris Davis |
| THIRTY-SIX | 4/29/10 | DOR Duplicate Salvage Title | Veh. 68 | Morris Davis<br>Robert Reece |

| A | B | C | D | E |
|---|---|---|---|---|
| Count | Date of Mailing | Item Mailed | Vehicle | Defendants |
| THIRTY-SEVEN | 5/17/10 | DOR Duplicate Title | Veh. 37 | Shahadu Sutton<br>Morris Davis |
| THIRTY-EIGHT | 5/17/10 | DOR Duplicate Title | Veh. 35 | Morris Davis |
| THIRTY-NINE | 5/17/10 | DOR Duplicate Title | Veh. 36 | Morris Davis |
| FORTY | 6/8/10 | DOR Duplicate Title | Veh. 30 | Shahadu Sutton<br>Morris Davis<br>Robert Reece |
| FORTY-ONE | 6/9/10 | DOR Duplicate Title | Veh. 33 | Morris Davis |
| FORTY-TWO | 6/25/10 | DOR Duplicate Title | Veh. 32 | Morris Davis |
| FORTY-THREE | 7/22/10 | DOR Duplicate Title | Veh. 111 | Morris Davis |
| FORTY-FOUR | 7/6/10 | DOR Duplicate Title | Veh. 38 | Shahadu Sutton<br>Morris Davis<br>Robert Reece |
| FORTY-FIVE | 7/12/10 | DOR Duplicate Title | Veh. 39 | Shahadu Sutton<br>Morris Davis<br>Robert Reece |
| FORTY-SIX | 4/19/11 | Osage Nation Title | Veh. 71 | Shahadu Sutton<br>William Smith |
| FORTY-SEVEN | 4/19/11 | Osage Nation Title | Veh. 44 | William Smith<br>Reginald Davis<br>Chester Wilson |
| FORTY-EIGHT | 4/29/11 | Osage Nation Title | Veh. 95 | William Smith<br>Orlando Preston |
| FORTY-NINE | 6/10/11 | Osage Nation Title | Veh. 114 | Shahadu Sutton<br>William Smith |
| FIFTY | 7/14/11 | DOR Original Title | Veh. 66 | Shahadu Sutton<br>Morris Davis<br>Reginald McNeary<br>Robert Reece<br>Sheldon Mitchell |
| FIFTY-ONE | 7/20/11 | Osage Nation Title | Veh. 49 | Shahadu Sutton<br>William Smith<br>Reginald McNeary |
| FIFTY-TWO | 7/20/11 | Osage Nation Title | Veh. 45 | Shahadu Sutton<br>William Smith |

| A<br>Count | B<br>Date of<br>Mailing | C<br>Item Mailed | D<br>Vehicle | E<br>Defendants |
|---|---|---|---|---|
| FIFTY-THREE | 9/26/11 | Osage Nation Title | Veh. 48 | Shahadu Sutton<br>William Smith |
| FIFTY-FOUR | 9/26/11 | Osage Nation Title | Veh. 104 | Orlando Preston<br>William Smith |
| FIFTY-FIVE | 12/19/11 | DOR Original Title | Veh. 86 | Tiffany Sutton<br>Orlando Preston<br>William Smith<br>Chester Wilson |
| FIFTY-SIX | 2/7/12 | DOR Original Title | Veh. 70(a) | Randy Terrell<br>Lonnie Jordan |
| FIFTY-SEVEN | 3/16/12 | Osage Nation Title | Veh.75 | Morris Davis<br>William Smith<br>Reginald McNeary |
| FIFTY-EIGHT | 9/4/12 | Osage Nation Title | Veh. 108 | Orlando Preston<br>William Smith |

All in violation of, and punishable under, Title 18, United States Code, Sections 1341 and 2.

### COUNTS FIFTY-NINE THROUGH SIXTY-NINE
### (Mail Fraud)

The Grand Jury further charges that:

49. The allegations contained in paragraphs 1 through 34 of the Indictment are realleged and incorporated herein by reference as if fully set forth.

50. From on or about July 2008 and continuing up until the present date in the Eastern District of Missouri,

**SHAHADU SUTTON,**
**REGINALD MCNEARY, and**
**JOSEPH PEARSON**

the defendants herein, aided and abetted by each other, together with others both known and unknown to this Grand Jury, did knowingly and willfully devise and intend to devise a scheme

and artifice to defraud and to obtain money from persons and their insurance companies by means of false and fraudulent pretenses and representations.

**THE SCHEME**

51. The scheme and artifice to defraud and to obtain money by means of materially false and fraudulent representations and pretenses is more particularly described as follows:

52. The grand jury realleges and incorporates by reference, paragraphs 36w through 36dd of the Indictment as if fully set forth herein.

**EXECUTION OF THE SCHEME**

53. On or about the dates listed in Column B, the defendants listed in Column E, for the purpose of executing the scheme and artifice and attempting to do so, knowingly mailed and caused to be delivered by United States mail the items described in Column C, (the asterisk * symbol in Column C indicates that the item was mailed and the absence of an asterisk indicates that the item was delivered by mail, all in the Eastern District of Missouri) with regard to fraud perpetrated concerning the vehicles listed in Column D.

| A | B | C | D | E |
|---|---|---|---|---|
| **Count** | **Date of Mailing** | **Item Mailed** | **Vehicle** | **Defendants** |
| FIFTY-NINE | 7/21/08 | American Family Insurance check - $8,599.00 payable and mailed to GMAC  * | Veh. 22 | Joseph Pearson |
| SIXTY | 10/30/08 | Progressive Insurance check - $9,775.00 payable and mailed to Capital One  * | Veh. 20 | Reginald McNeary |
| SIXTY-ONE | 12/2/08 | State Farm Insurance check - $38,916.50 payable and mailed to Shahadu Sutton | Veh. 27 | Shahadu Sutton |
| SIXTY-TWO | 3/10/09 | Affidavit of no insurance by K.Y. mailed to Republic Western Insurance       * | Veh. 81 | Reginald McNeary |

| A | B | C | D | E |
|---|---|---|---|---|
| Count | Date of Mailing | Item Mailed | Vehicle | Defendants |
| SIXTY-THREE | 6/2/10 | Progressive Insurance check - $10,372.82 payable and mailed to Shahadu Sutton | Veh. 17 | Shahadu Sutton |
| SIXTY-FOUR | 9/10/10 | American Family Insurance check-$2,085.66 payable and mailed to J.Z. | Veh. 99 | Reginald McNeary |
| SIXTY-FIVE | 11/10/10 | Letter from attorney for Shahadu Sutton, demanding payment for property damage claim mailed to attorney for Progressive Insurance * | Veh. 18 | Shahadu Sutton |
| SIXTY-SIX | 1/5/11 | Farmer's Insurance check-$6,740.50 payable to Reginald McNeary and Bill's Automotive and mailed to Bill's Automotive | Veh. 75 | Reginald McNeary |
| SIXTY-SEVEN | 3/14/11 | Omni Insurance check - $9,999.63 payable to R&R Auto and Shahadu Sutton and mailed to R&R Auto * | Veh. 32 | Shahadu Sutton Reginald McNeary |
| SIXTY-EIGHT | 8/4/11 | Farmer's Insurance check - $4,777.00 payable and mailed to J.M. | Veh. 95 | Reginald McNeary |
| SIXTY-NINE | 11/17/11 | Safeco Insurance check - $4,046.82 payable and mailed to Richard McNeary | Veh. 97 | Reginald McNeary |

All in violation of, and punishable under, Title 18, United States Code, Sections 1341 and 2.

## COUNT SEVENTY
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

54. On or about January 21, 2011, in the Eastern District of Missouri,

**SHAHADU SUTTON,**
**MORRIS DAVIS, and**
**JOHN HICKS,**

the defendants herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 54, which had crossed a state boundary after being stolen on or about January 4, 2011, in the State of Iowa and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-ONE
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

55.   On or about April 4, 2011, in the Eastern District of Missouri,

**WILLIAM SMITH,**
**REGINALD DAVIS, and**
**CHESTER WILSON,**

the defendants herein, did receive, possess, sell and dispose of a stolen vehicle, to wit:  Veh. 44, which had crossed a state boundary after being stolen between July 20, 2010 and August 12, 2010, in the State of Illinois and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-TWO
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

56.   On or about May 16, 2011, in the Eastern District of Missouri,

**SHAHADU SUTTON,**
**WILLIAM SMITH, and**
**CHESTER WILSON,**

the defendants herein, did receive, possess, sell and dispose of a stolen vehicle, to wit:  Veh. 43, which had crossed a state boundary after being stolen on or about February 23, 2011, in the State of Iowa and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-THREE
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

57. On or about May 23, 2011, in the Eastern District of Missouri,

### RANDY TERRELL,

the defendant herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 46, which had crossed a state boundary after being stolen between May 9, 2011 and May 16, 2011, in the State of Iowa and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-FOUR
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

58. On or about May 26, 2011, in the Eastern District of Missouri,

### SHAHADU SUTTON, and
### WILLIAM SMITH,

the defendants herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 45, which had crossed a state boundary after being stolen between January 3, 2011 and February 15, 2011, in the State of Iowa and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-FIVE
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

59. Between June 14, 2011 and September 18, 2011, in the Eastern District of Missouri,

**RANDY TERRELL,**

the defendant herein, did receive, possess, sell and dispose of stolen vehicle, to wit:  Veh. 53,

which had crossed a state boundary after being stolen on or about June 14, 2011, in the State of

Iowa and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-SIX
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

60. On or about June 17, 2011, in the Eastern District of Missouri,

**SHAHADU SUTTON, and**
**RANDY TERRELL,**

the defendants herein, did receive, possess, sell and dispose of a stolen vehicle, to wit:  Veh. 50,

which had crossed a state boundary after being stolen on or about April 8, 2011, in the State of

Illinois and subsequently brought into the State of Missouri, knowing the same to have been

stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-SEVEN
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

61. On or about June 20, 2011, in the Eastern District of Missouri,

**TERRELLE MARION,**

the defendant herein, did receive, possess, sell and dispose of a stolen vehicle, to wit:  Veh. 56,

which had crossed a state boundary after being stolen on or about May 11, 2011, in the State of

Indiana and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-EIGHT
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

62. On or about June 23, 2011, in the Eastern District of Missouri,

**ARVIS DUNBAR,**

the defendant herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 42, which had crossed a state boundary after being stolen between January 24, 2011 and January 26, 2011, in the State of Illinois and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT SEVENTY-NINE
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

63. On or about July 24, 2011, in the Eastern District of Missouri,

**JERMAINE GAMBLE,**

the defendant herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 51, which had crossed a state boundary after being stolen on or about June 14, 2011, in the State of Iowa and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT EIGHTY
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

64. On or about July 24, 2011, in the Eastern District of Missouri,

**JERMAINE GAMBLE,**

the defendant herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 52,

which had crossed a state boundary after being stolen on or about June 14, 2011, in the State of

Iowa and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under Title 18, United States Code, Sections 2313 and 2.

### COUNT EIGHTY-ONE
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

65. On or about July 24, 2011, in the Eastern District of Missouri,

**RANDY TERRELL, and**
**TERRELLE MARION,**

the defendants herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 112,

which had crossed a state boundary after being stolen between May 3, 2011 and June 24, 2011,

in the State of Indiana and subsequently brought into the State of Missouri, knowing the same to

have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

### COUNT EIGHTY-TWO
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

66. On or about August 19, 2011, in the Eastern District of Missouri,

**DENVER CARROLL III, and**
**REGINALD MCNEARY,**

the defendants herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 64, which had crossed a state boundary after being stolen on or about May 17, 2011, in the State of Illinois and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

## COUNT EIGHTY-THREE
### (Receipt of Stolen Motor Vehicle)

The Grand Jury further charges that:

67. On or about September 29, 2011, in the Eastern District of Missouri,

### SHAHADU SUTTON, and
### WILLIAM SMITH,

the defendants herein, did receive, possess, sell and dispose of a stolen vehicle, to wit: Veh. 48, which had crossed a state boundary after being stolen on or about April 28, 2011, in the State of Georgia and subsequently brought into the State of Missouri, knowing the same to have been stolen.

In violation of, and punishable under, Title 18, United States Code, Sections 2313 and 2.

## COUNT EIGHTY-FOUR
### (Chop Shop)

The Grand Jury further charges that:

68. On or about August 17, 2011, in the Eastern District of Missouri,

### ORLANDO PRESTON,

the defendant herein, did knowingly and intentionally own, operate, maintain, control, and conduct operations in a chop shop, as defined in Title 18, United States Code, Section 2322(b).

In violation of, and punishable under, Title 18, United States Code, Section 2322(a)(1).

## FORFEITURE ALLEGATION

The Grand Jury further charges that:

69. The allegations contained in Counts One through Eighty-Four of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures, pursuant to the provisions of Title 18, United States Code, Section 982(a).

70. Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of a violation of, and conspiring to violate, Title 18, United States Code, Sections 1341 and 1344 as set forth in Counts One through Sixty-Nine, the defendants shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, either directly or indirectly, from commission of the offense.

71. Pursuant to Title 18, United States Code, Section 982(a)(5), upon conviction of a violation of, and conspiring to violate, Title 18, United States Code, Sections 2312 and 2313 as set forth in Counts One, and Seventy through Eighty-Three the defendants shall forfeit to the United States of America any property, real or personal, that constitutes, or is derived from or is traceable to the gross proceeds obtained directly or indirectly from the commission of the offense.

72. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, that constitutes, or is derived from or is traceable to the proceeds obtained, either directly or indirectly, from the commission of the offense, but is at least $2,500,000.00, which represents the minimum amount of proceeds obtained as a result of such offenses.

73. If any of the property described in the above paragraphs, as a result of any act or omission of the defendant,

a. cannot be located upon the exercise of due diligence;
b. has been transferred to, sold to, or deposited with a third person;
c. has been place beyond the jurisdiction of the Court;
d. has been substantially diminished in value; and/or
e. has been commingled with other property that cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any property of the defendants up to the value of the property described above as being subject to forfeiture.


A TRUE BILL


_____
FOREPERSON


RICHARD G. CALLAHAN
United States Attorney


_____
JOHN J. WARE, #40880MO
STEPHEN CASEY, #58879MO
Assistant United States Attorney